IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| MICHAEL C. DUFFEY, | : | No. 4 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1840 CD |
| v. | : | 2014 dated 6/26/15 affirming the |
| | : | decision of the Workers' Compensation |
| | : | Appeal Board at Nos. A13-0229 and |
| WORKERS' COMPENSATION APPEAL | : | A13-1158 dated 9/16/14 |
| BOARD (TROLA-DYNE, INC.), | : | |
| | : | |
| Appellees | : | ARGUED: September 14, 2016 |

**OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  January 19, 2017**

The issue in this workers' compensation appeal is ultimately whether a notice of compensation payable closely circumscribes the range of health-related conditions to be considered in impairment rating evaluations.

Appellant Michael C. Duffey ("Claimant") sustained injuries to his hands when he picked up electrified wires while repairing a machine for Appellee, Trola-Dyne, Inc. ("Employer").  Employer issued a notice of compensation payable (the "NCP") per Sections 406.1 and 410 of the Workers' Compensation Act,[1] 77 P.S. §§717.1, 731, which indicated that the "[b]ody [p]art(s) affected" were "bilateral hands"; the type of

---

[1] Act of June 2, 1915, P.L. 736 (as amended 77 P.S. §§1 - 1041.4, 2501 – 2626 (the "WCA" or the "Act")).

injury was "electrical burn"; and the description of the injury was "stripping some electrical wire."

On March 6, 2011, after Claimant had received benefits for total disability for a period of 104 weeks, Employer requested an impairment rating evaluation pursuant to Section 306(a.2)(1) of the Act, 77 P.S. §511.2(1).[2] In its request for designation of a physician to perform the evaluation per the applicable administrative regulations, *see* 34 Pa. Code §123.104, Employer described the underlying compensable injury as "bilateral hands-nerve and joint pain."

A few months later, Claimant submitted to an impairment rating evaluation (the "IRE") by Bruce E. Sicilia, M.D. (the "Physician-Evaluator"), a specialist in physical medicine and rehabilitation. The Physician-Evaluator assigned a whole-body impairment rating of six percent, prompting Employer to issue a notice informing Claimant that his disability status would change from total to partial.[3] This modification did not decrease the amount of Claimant's weekly benefits, *see* 77 P.S. §511.2(3) ("Unless otherwise adjudicated or agreed to based upon a determination of earning power . . ., the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same."), but instead, had the effect of limiting Claimant's receipt of benefits to a 500-week period, *see id.* §512(1) (prescribing that partial disability benefits are to be paid "for not more than five hundred weeks").

---

[2] This Court recently summarized the impairment rating regime in *IA Construction Corporation v. WCAB (Rhodes)*, ___ Pa. ___, ___, 139 A.3d 154, 155-56 (2016).

[3] *See* 77 P.S. §511.2(2) (prescribing that, if an impairment rating determination under Section 306(a.2)(1) results in an impairment rating of less than 50 percent impairment under the relevant criteria, "the employe shall then receive partial disability benefits under [Section 306(b)]"); *see also* 34 Pa. Code §123.105(d) (providing for a requisite notice to the employee of the change in status from total to partial disability).

Claimant proceeded to file a review petition attacking the validity of the IRE. Claimant did not aver that there had been a determination that he actually met the threshold impairment rating of at least 50 percent, as facially is required to support a challenge to an IRE under Section 306(a.2). *See id.* §511.2(4) ("An employe may appeal the change to partial disability . . . [p]rovided, [t]hat there is a determination that the employe meets the threshold impairment rating that is equal to or greater than fifty per centum impairment[.]"). Nevertheless, Claimant proceeded under prevailing Commonwealth Court precedent holding that such requirement does not pertain where the challenge is lodged, as it was here, within 60 days after the employer provides the claimant with notice of the status change from total to partial disability. *See Barrett v. WCAB (Sunoco, Inc.)*, 987 A.2d 1280, 1288-89 (Pa. Cmwlth. 2010).[4] It was Claimant's position that the Physician-Evaluator had failed to rate the full range of work-related injuries, since Claimant suffered from adjustment disorder with depressed mood and chronic post-traumatic stress disorder as a result of his work injury.[5]

---

[4] It is beyond the scope of this appeal to consider the validity of the Commonwealth Court's precedent on the subject of whether Section 306(a.2)(4) applies to challenges lodged within the 60-day period.

[5] As further discussed below, Claimant's framing of his argument, which has continued into the present appeal, is misleading. In this regard, physician-evaluators do not specifically rate "injuries"; rather, it is their obligation under the governing statute to determine "the degree of impairment due to the compensable injury." 77 P.S. §511.2(1). Thus, the rating is of *impairments* deriving from injuries.

Despite this diversion, Claimant's arguments do incorporate the notion that an impairment rating evaluator has "the obligation to address all work-related *conditions* existing at the time of the evaluation." Brief for Appellant at 19 (emphasis added). Accordingly, although Claimant's focus on rating injuries as opposed to impairments is pervasive, we find that his arguments do subsume the contention that an impairment rating evaluator is obliged to "determine the degree of *impairment due to* the compensable injury," 77 P.S. §511.2(1) (emphasis added), regardless of whether such impairment is otherwise separately denoted as a compensable injury unto itself.

At hearings before a workers' compensation judge (the "WCJ"), Claimant adduced his own testimony concerning the circumstances surrounding his injury and his initial and ongoing symptoms and treatment. According to this testimony, Claimant developed, and continued to experience, impairment in the use of his hands, agonizing deep pain, and debilitating exhaustion. *See, e.g.*, N.T., Dec. 16, 2011, at 7-8.

Claimant later supplemented the record with deposition testimony from his family physician, Debra A. Bell, M.D., who had diagnosed Claimant with the adjustment disorder with depressed mood and chronic post-traumatic stress disorder and treated him for such conditions. *See* Deposition of Debra A. Bell, M.D., dated Mar. 20, 2012, in *Duffy v. Trola-Dyne Inc.*, No. 3485314 (DLI, Bur. of Workers' Comp.), at 16, 18. Claimant also introduced deposition testimony from a neurologist, Scott M. Cherry, M.D., who attested that Claimant's injury had evolved into a disabling, chronic neuropathic pain syndrome attended by emotional and cognitive changes. *See* Deposition of Scott M. Cherry, M.D., dated Dec. 9, 2011, in *Duffy*, No. 3485314, at 14, 16, 19, 33.

Employer presented the Physician-Evaluator's testimony supporting the rating evaluation that he conducted. The Physician-Evaluator explained that, in addition to accounting for Claimant's physical condition, he also considered Claimant's complaints of pain, encompassing "work-related chronic neuropathic pain syndrome," Deposition of Bruce E. Sicilia, M.D., dated July 27, 2012, in *Duffy*, No. 3485314, at 23, 25, rating the condition according to a sensory impairment table provided in the governing impairment guidelines, *see id.* at 24. *See generally* 77 P.S. §511.2(1) (keying impairment rating evaluations to "the most recent edition of the American Medical Association 'Guides to the Evaluation of Permanent Impairment'"). According to the Physician-Evaluator, however, the rating did not account for asserted work-related adjustment disorder or

post-traumatic stress syndrome. In this regard, the Physician-Evaluator offered the following explanation:

> I am not a psychiatrist and I don't have appropriate skills, if you will, to do that type of assessment. And I was specifically asked to assess his electrical burn injuries and I did that.

Deposition of Bruce E. Sicilia, M.D., dated July 27, 2012, in *Duffy*, No. 3485314, at 31.

A clinical and forensic psychiatrist, Timothy J. Michals, M.D., also testified, via deposition on Employer's behalf, that he had evaluated Claimant and concluded that he had recovered from the adjustment disorder with anxiety and depressed mood. *See* Deposition of Timothy J. Michals, M.D., dated Aug. 1, 2012, in *Duffy*, No. 3485314, at 26-27. Dr. Michals further expressed his disagreement with the diagnosis of post-traumatic stress disorder. *See id.* at 32-34.

The WCJ accepted Claimant's evidence as credible and rejected Employer's conflicting evidence, directed that Claimant's psychological conditions should be added to the notice of compensation payable, and determined that the IRE was invalid, because the Physician-Evaluator had not addressed those conditions. Accordingly, the WCJ also found that the total-disability status assigned to Claimant's benefits could not be modified.

On appeal, the Workers' Compensation Appeal Board reversed the decision to invalidate the IRE, reasoning that a physician-evaluator may properly limit an impairment rating evaluation according to the accepted injuries as reflected in a notice of compensation payable. Along these lines, the Board observed that Claimant had not sought to amend the NCP to include additional injuries in a timely fashion, but instead, waited to do so until almost six months after the IRE was performed. The Board thus held that the six percent impairment rating assigned by the Physician-Evaluator was

valid and, accordingly, modified the status of Claimant's benefits from total to partial disability.

On further appeal, the Commonwealth Court affirmed the Board's order in a published opinion. *See Duffey v. WCAB (Trola-Dyne, Inc.)*, 119 A.3d 445 (Pa. Cmwlth. 2015). From the outset of its analysis, the intermediate court emphasized that Section 306(a.2) requires a determination of the degree of impairment "*due to the compensable injury.*" *Id.* at 450 (emphasis in original). The court then focused most of its remaining analysis on the "compensable injury" component of this phrase, explaining that the notice of compensation payable establishes the description of the work injury. *See id.* at 451 (quoting *Harrison v. WCAB (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703 (Pa. Cmwlth. 2013)). In light of this approach -- and given that an impairment rating evaluation involves an assessment of a claimant's condition at the time of the evaluation, *see id.* (quoting *Westmoreland Reg'l Hosp. v. WCAB (Pickford)*, 29 A.3d 120, 128 (Pa. Cmwlth. 2011)) -- the court indicated that "the focus in determining the validity of an [impairment rating evaluation] is on the state of the claimant and the compensable injury, *as described in the [notice of compensation payable] at the time the [impairment rating evaluation] is performed*." *Id.* (emphasis in original).

After distinguishing several previous decisions, the Commonwealth Court expressed its disinclination to "believe that the General Assembly intended to nullify an already performed and otherwise valid IRE by claims of new or additional injuries that were not yet determined to be work-related and, therefore, would not have been addressed by the [evaluating] physician." *Id.* at 452. To hold otherwise, the court posited, would contravene the reform goals of the 1996 amendment to the WCA which had implemented Section 306(a.2). *See id.* at 452-53.

Along these lines, the Commonwealth Court suggested that a contrary holding would encourage claimants to effectively sabotage impairment rating evaluations. *See id.* at 453 ("The delay in adding injuries as a litigation strategy to defeat an [impairment rating evaluation] performed under Section 306(a.2) does not serve the purpose of the IRE process or the 1996 Amendments to the Act."). In this respect, the intermediate court stressed that an employer has only a single opportunity to obtain a self-executing change of a claimant's status from total to partial disability. *See id.* ("Claimant's position would effectively strip Employer of its only opportunity to obtain a self-executing change in disability status, by adding injuries to the [notice of compensation payable] after the IRE is performed and having the IRE declared invalid."). According to the court, claimants should be encouraged to be proactive in updating notices of compensation payable so that their constellation of injuries can be considered in impairment rating evaluations. *See id.*[6]

We find the outcome of this case to be controlled by straightforward statutory interpretation, a matter over which our review is plenary. *See, e.g.*, *Fish v. Twp. of Lower Merion*, ___ Pa. ___, ___, 128 A.3d 764, 769 (2015). At the outset, we reiterate that a pervasive focus on "compensable injury" has obscured an important aspect of the governing statute. *See supra* note 5. In this regard, Section 306(a.2) explicitly invests in physician-evaluators the obligation to "determine the degree of impairment *due to* the compensable injury," 77 P.S. §511.2(1) (emphasis added). Per such express terms, a physician-evaluator must consider and determine causality in terms of whether any particular impairment is "due to" the compensable injury. *Id.* Moreover, the required

---

[6] The Commonwealth Court further observed that its decision did not foreclose a subsequent challenge to the IRE under Section 306(a.2)(4), to the degree that Claimant could produce an impairment rating evaluation demonstrating at least 50 percent impairment. *See id.* (citing 77 P.S. §511.2(4)).

evaluation is of "the percentage of permanent impairment *of the whole body* resulting from the compensable injury." 77 P.S. §511.2(8)(ii).

We have no difference with the Commonwealth Court's reasonable holding that a notice of compensation payable should define "compensable injury" for purposes of this inquiry. Such recognition, however, simply does not determine the range of impairments which may be "due to" such injury. Under Section 306(a.2) and the applicable impairment guidelines, the physician-evaluator must exercise professional judgment to render appropriate decisions concerning both causality and apportionment. *See id.*; *accord* AM. MED. ASS'N, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT, Ch. 2, Introduction (6th ed. 2009) (the "AMA Guides") ("Physicians must use their clinical knowledge, skills, and abilities to arrive at a specific diagnosis; define the pathology; and rate impairments based on the *Guides'* criteria.").[7]

It is noteworthy that causation, for purposes of the AMA Guides, is assessed, in the first instance, by reference to an "event" rather than an "injury," thus creating some potential tension with Section 306(a.2)'s focus on causal association with a compensable injury. *See* AMA Guides §2.5b ("Causality is an association between a given cause (an event capable of producing an effect) and an effect (a condition that can result from a specific cause) with a reasonable degree of medical probability."). *But cf. id.* Ch. 2, Introduction (depicting the AMA Guides as a "tool to translate human pathology resulting from a trauma or disease process into a percentage of the whole person"). Accordingly, there may be some basis in the AMA Guides permitting a

---

[7] Parenthetically, the Commonwealth Court has separately determined that the 6th edition of the AMA Guides cannot be used to conduct impairment rating evaluations in Pennsylvania. *See Protz v. WCAB (Derry Area Sch. Dist.)*, 124 A.3d 406, 416-17 (Pa. Cmwlth. 2015), *appeal granted*, ___ Pa. ___, 133 A.3d 733 (Pa. 2016) (*per curiam*). Claimant, however, did not raise such a challenge, and the validity of the use of the 6th edition is beyond the scope of the present appeal.

physician-evaluator to attribute a claimant's psychological disorders to the event in which the claimant was was injured, rather than to the compensable injury itself. Again, however, a physician-evaluator simply may not entirely disavow any and all responsibility to consider causality relative to a given condition. *See* 77 P.S. §511.2(1).[8]

---

[8] In dissent, Justice Baer posits that the outcome of this case should turn on an event-injury dichotomy. *See* Dissenting Opinion, *slip op.* at 2, 3 n.1 (Baer, J.). According to the dissent, Claimant does not attribute his psychological conditions to his electrical burn injury, *id.* at 2 -- which has been recognized by Employer to encompass bilateral nerve and joint pain in the hands -- and it should be obvious that the incident and the recognized injury are entirely distinct, *see id.* To the contrary, however, although Claimant does explain that he was diagnosed with post-traumatic stress disorder "from the incident," he depicts this to encompass the electrical "lead in his left hand consist[ing] of two wires . . . melt[ing] to the bones in his hand." Brief for Appellant at 3. Moreover, the expert testimony that Claimant offered and which was credited by the workers' compensation judge described an ongoing pain syndrome originating in Claimant's hands, as well as a failure to improve from physical impairments, yielding derivative psychological conditions. *See, e.g.*, Deposition of Scott M. Cherry, M.D., dated Dec. 9, 2011, in *Duffy*, No. 3485314, at 12-13 (describing the ongoing pain syndrome); *id.* at 14 ("I felt that he had, as was clearly obvious, the electrical injury and that this subsequently evolved into a chronic neuropathic pain syndrome"); *id.* at 33 ("The stated injury, . . . electrical burn injury was followed by a syndrome of chronic pain complicated by emotional and cognitive changes."); Deposition of Debra A. Bell, M.D., dated Mar. 20, 2012, in *Duffy*, No. 3485314, at 16 (attributing Claimant's adjustment disorder to his failure to improve after his initial injury); *id.* at 27-28 (opining that Claimant's post-traumatic stress disorder was caused by his previous physical impairment).

We believe that the impairment rating process encompasses discerning judgments recognizing the complexity of injury and causation, arising in part because notions of an "incident" (presently described by the dissent as "being electrocuted at work") and attendant "injuries" (here, electrical burn and attendant nerve and joint pain) can be integrally interrelated. *See infra* note 10. In this case, however, the Physician-Examiner made no such judgments related to an event-injury distinction or otherwise, and such failure is both the specific basis for our decision and a matter about which Claimant expressly complains. *See, e.g.*, Brief for Appellant at 14 (attacking the IRE because the Physician-Examiner "did not rate [the additional diagnoses] *because of the limited scope of his exam and his lack of qualifications pertaining to those conditions*." (emphasis added)).

Here, it is apparent from the record that the Physician-Evaluator did not apply professional judgment to assess (or, per the applicable regulations, arrange for an assessment of) the psychological conditions identified by Claimant during the IRE examination;[9] nor did he determine whether such conditions as might have been diagnosed were fairly attributable to Claimant's compensable injury. Instead of abiding by the directives of Section 306(a.2) and the AMA Guides in such regards, the Physician-Evaluator purported to take a different set of instructions from Employer. *See* Deposition of Bruce E. Sicilia, M.D., dated July 27, 2012, in *Duffy*, No. 3485314, at 31 ("I was specifically asked to assess his electrical burn injuries and I did that."). Proceeding as such, the Physician-Evaluator simply ignored a range of potential diagnoses and impairments. *See, e.g.*, *id.* at 15 (reflecting the evaluator's testimony that Claimant's depression "was not rateable [sic] at the time *because I was not asked to rate it.*" (emphasis added)). Again, however, the Physician-Evaluator was bound to take his guidance, not from Employer, but from Section 306(a.2) and the AMA Guides. *See* AMA Guides §2.3b ("As an impairment evaluator, the physician must understand the regulations pertaining to medical practice and evaluation."); *id.* Chapter 2, Introduction ("Physicians must use their clinical knowledge, skills, and abilities to arrive at a specific diagnosis; define the pathology; and rate impairments based on the *Guides'* criteria.").

The Commonwealth Court's opinion may reflect a pragmatic approach in requiring claimants manifesting psychological symptoms deriving from a compensable

---

[9] *See* 34 Pa. Code §123.105(b) ("To ascertain an accurate percentage of the employee's whole body impairment, when the evaluating physician determines that the compensable injury incorporates more than one pathology, the evaluating physician may refer the employee to one or more physicians specializing in the specific pathologies which constitute the compensable injury.").

injury to address the causality question in advance of an impairment rating evaluation. There may obviously be an attendant concern that the alternative is to require psychological assessments in the broader range of impairment rating evaluations.

There are competing considerations involved, however. For example, injuries often are depicted briefly, and even cryptically, on notices of compensation payable.[10] Furthermore, benefits ultimately cease as a result of an unfavorable rating evaluation, although a claimant may remain, in conventional terms, totally disabled and unable to provide for his or her own well-being. *See generally IA Constr.*, ___ Pa. at ___, 139 A.3d at 155 (discussing the distinction between impairment and disability in terms of the focus of the latter term on loss of earnings capacity); AMA Guides §2.3b (reflecting that the object of the impairment rating process is "to enable a fair and competent determination of benefits to which the [subject of the evaluation] may be entitled").

Moreover, per the AMA Guides, as a matter of clinical judgment, a physician-evaluator may, where appropriate, treat the impairment rating pertaining to a particular organ or body system as encompassing a whole body assessment. *See* AMA Guides §§2.2a, 14.1c (reflecting the general rule that "[*t*]*he psychological distress associated with a physical impairment is . . . included within the rating*" for a physical condition (emphasis in original)). In point of fact, the AMA Guides rather pointedly discourage separate treatment of psychological effects. *See* AMA Guides §14.1c ("In most cases of a mental and behavioral disorder accompanying a physical impairment, . . . *the*

---

[10] In this regard, there is a tendency, in the workers' compensation arena, to oversimplify what can sometimes be complex subjects, such as injury and impairment. *See generally* AMA Guides §1.3b (recognizing "the complex and dynamic interactions between an individual with a given health condition, the environment, and personal factors"); *id.* §1.5a ("Impairment and disability are complex concepts . . .."); *id.* ("[T]he impact of injury or illness is dependent on factors beyond physical and psychological aspects, including biopsychosocial, behavioral and contextual issues.").

*mental and behavioral disorder chapter should not be used.*" (emphasis added)). In this regard, it devolves to the physician-evaluator's sound professional judgment whether, and under what circumstances, psychological conditions effectively graduate to distinct consideration per the AMA Guides' mental-and-behavioral-disorders protocols.[11]

In all events, the evaluative judgment is the touchstone on these subjects, as well as on the topic of causality. In the present case, since the Physician-Examiner failed to exercise such judgment based on a misunderstanding concerning the scope of his responsibilities, the WCJ did not err in invalidating the IRE.

The dissenting opinion authored by Justice Wecht chastises this opinion on multiple fronts, asserting that we have: exceeded the scope of the issues presented; ignored the statutory definition of "impairments"; compromised the impairment-rating process; inappropriately misallocated decision-making responsibility relative to causation from workers' compensation judges to physician-evaluators; and disregarded

---

[11] Citing to a listing of rules set forth in Chapter 14 of the AMA Guides, Justice Wecht's dissent eschews the exercise of sound medical expertise and judgment, *see* Dissenting Opinion, *slip op.* at 5 (Wecht, J.), which is otherwise the touchstone of impairment rating evaluations. *See, e.g.*, AMA Guides §2.3b. The dissent, however, fails to recognize that the rules to which it refers are expressed in non-exclusive terms. *See* AMA Guides at §14.1c (stating that the rules for using Chapter 14 "would include" those highlighted by the dissent). *See generally Mishoe v. Erie Ins. Co.*, 573 Pa. 267, 288, 824 A.2d 1153, 1165 (2003) (explaining that the term "includes" represents "non-exclusive verbiage").

In any event, we have not disputed that the Physician-Examiner potentially *could have* appropriately relied on rules stated in Chapter 14, otherwise invoked principles under the AMA Guides, or exercised sound professional judgment to exclude Chapter 14's application. However, as developed in the text above, the record amply demonstrates that that simply is not what occurred in the present case. Rather, the Physician-Examiner erroneously followed instructions that were extrinsic to the AMA Guides, as well as the terms of the governing statute.

the significance of the fourth edition of the AMA Guides to the Evaluation of Permanent Impairment.

Regarding the issue preservation concern, Justice Wecht characterizes the question presented as a narrow one limited to the following:

> Does an amendment that expands the injury description on a notice of compensation payable ("NCP") invalidate an impairment rating evaluation ("IRE") that was conducted before the amendment?

Dissenting Opinion, *slip op.* at 1 (Wecht, J.). In point of fact, however, the issue accepted for review is framed in a considerably different fashion, *see Duffey v. WCAB (Trola-Dyne, Inc.)*, ___ Pa. ___, ___, 131 A.3d 480, 481 (2016) (*per curiam*), as are the arguments in Claimant's brief.[12]

While, as we have previously explained, the issue statement and Claimant's arguments are clouded by a conflation of the terms "injury" and "impairment," *see supra* note 5, Claimant's brief otherwise makes clear that he is advancing the position that a

---

[12] Per this Court's order allowing the appeal, the issue accepted for review is as follows:

> Did the Commonwealth Court err in concluding that an Impairment Rating Evaluation (IRE) . . . was valid where the IRE only considered the injuries listed on the notice of compensation payable issued at the time of the injury, and did not consider additional injuries that subsequently arose and were known at the time of the IRE but not yet formally added to the description of injury?

*Id.* As Justice Wecht's dissent stresses, Claimant does accept an additional obligation to secure a post-evaluation modification of the notice of compensation payable within a reasonable time after a contested rating evaluation. In our considered opinion, however, this does not prevent us from recognizing Claimant's explicit assertions of an error on the part of the Physician-Evaluator in the first instance in declining to consider the degree of whole-body impairment due to the compensable injury as the governing statute explicitly requires. *See* 77 P.S. §511.2(1), (8).

physician-evaluator has an obligation "to address *all work-related conditions* at the time of the evaluation." Brief for Appellant at 19 (emphasis added).[13] Unfortunately, the difficulty with the terms "injury" and "impairment" arises from the complexity of these overlapping and intersecting -- but also diverging -- concepts. *See, e.g.*, *supra* note 10.[14] Indeed, such conflation appears to be quite common. *See, e.g.*, Dissenting Opinion, *slip op.* at 1 (Wecht, J.) (incorrectly asserting that the holding of this opinion is that physicians must assess all of the claimant's "injuries," when in point of fact, we have repeatedly explained that the statutorily prescribed duty is simply to assess "the degree of *impairment* due to the compensable injury" on a "whole body" basis, 77 P.S. §511.2(1), (8)(ii) (emphasis added)).

As a more general observation, a Court of last resort must have some leeway to make rational judgments and pronouncements that are not strictly confined according to the precise letter of parties' arguments. Otherwise, the law would be shaped according to the nuances of the litigants' presentations, including the extremes toward which they sometimes press their positions within the adversary system. Such latitude is

---

[13] *Accord id.* at 7 ("The Claimant submits that for an IRE to be valid, all of the Claimant's work-related conditions at the time of the IRE must be rated."); *id.* at 8 (explaining that Claimant advised the Physician-Evaluator of his psychological conditions at the time of the evaluation and faulting the Physician-Evaluator for failing as a consequence to consider such conditions in the rating evaluation); Brief for *Amicus* Pa. Ass'n for Justice at 5 ("[T]he Court should hold that in a timely filed appeal of an IRE determination, if the evidence shows that the IRE did not consider all work related pathologies, then the IRE is invalid.").

[14] For example, an amputation is both an "injury," *see, e.g.*, 77 P.S. §513, and an impairment, *see, e.g.*, AMA Guides at §15.6 (discussing "Amputation Impairment"). Accordingly, to the extent that the dissent envisions a categorical division between the two -- per which a condition that may be an injury for purposes of the traditional compensation regime cannot also represent a derivative impairment for purposes of the distinct impairment rating regime, *see* Dissenting Opinion, *slip op.* at 2-3 (Wecht, J.) -- such portrayal is incorrect.

particularly appropriate in matters involving statutory construction, where the language of the governing statute ultimately must remain the polestar for rulings having widespread application. Again, from our point of view, Claimant's position sufficiently implicates a plain-meaning interpretation of Section 306(a.2), and the need for clarification is sufficiently great, that the substantial differences between our approach and that of the dissents should be -- and are fairly -- resolved at the present time.[15]

In reply to the criticism that we have disregarded the statutory definition of "impairment," *see* Dissenting Opinion, *slip op.* at 1 (Wecht, J.), notably, the dissent fails

---

[15] To the degree that the dissents discern unfairness to Employer, we note that Claimant quotes the governing statute in his brief, *see* Brief for Appellant at 9 (explaining that an IRE is permitted "to determine the degree of impairment due to the compensable injury," (quoting 77 P.S. §511.2(1)), while repeatedly arguing that the Physician-Examiner erred by failing to account for his derivative psychological conditions. Indeed, Employer recognizes both that Claimant's arguments are multi-dimensional and that they encompass the notion that "the IRE should have taken into account any and all possible injuries that [Claimant] might have had *from the work injury.*" Brief for Appellee at 14 (emphasis added). Apparently based on such understanding, Employer ably advances all of the policy positions highlighted in the dissents. *See, e.g.*, *id.* at 15, 19, 23-24.

In response to Justice Wecht's claim that our decision to implement the plain import of the governing statute represents a substantial change in workers' compensation practice, Dissenting Opinion, *slip op.* at 3-4 (Wecht, J.), certainly the dissent has not identified any decisional law from this Court that is in conflict with our holding. For example, the *Commercial Credit Claims* decision which the dissent highlights was expressly decided under the distinct statutory language of the WCA's modification and termination schemes, *see Commercial Credit Claims v. WCAB (Lancaster)*, 556 Pa. 325, 332, 728 A.2d 902, 905 (1999) (explaining that the disposition of the case was "plainly dictated by the relevant statutory provisions"), whereas, our present decision is premised on the plain language of an entirely different statute. Moreover, it appears that the Commonwealth Court otherwise has recognized that the impairment rating system introduced a new conceptual overlay into the workers' compensation regime. *See, e.g.*, *Harrison v. WCAB (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703-04 (Pa. Cmwlth. 2013) (discussing an impairment rating "based on all of the claimant's medical conditions," while highlighting the conceptual difference between a traditional compensation determination and an impairment rating evaluation).

to provide a concrete explanation. To the degree that the dissent is suggesting that the statutory definition excludes psychological impairments, this is contradicted by both Section 306(a.2) and the AMA Guides which it incorporates.[16] Alternatively, to the extent that the dissent is proposing a rule that psychological "impairment" can result only from a psychological "injury," it fails to offer any textual grounding in the governing statute to support such a proposition. Indeed, as we have otherwise explained, psychological impairments are generally factored into the ratings for physical ones under the AMA Guides. *See* AMA Guides §§2.2a, 14.1c. In this way -- or through the alternative rating infrastructure provided in Chapter 14 of the AMA Guides where implicated -- psychological impairments are *always* a component of the "whole body" assessment explicitly required under Section 302(a.2). 77 P.S. §511.2(8)(ii). From our perspective, the dissent's contrary approach unduly intermingles traditional compensation concepts into an impairment rating regime that, by its explicit terms, institutes a different focus.

Next, we address the assertion, in Justice Wecht's dissent, that we have "convert[ed] the statute's impairment-rating process into one in which physicians must scrutinize each 'condition' hinted at by a claimant, and then determine which, if any, are 'fairly attributable' to the compensable injury." Dissenting Opinion, *slip op.* at 3 (Wecht, J.). From our point of view, this line of argument *reductio ad absurdum* understates the role of the permanency threshold for impairments (such that a cough or a cold would not qualify), *see* 77 P.S. §511.2(8)(ii), as well as the statutory causation requirement that

---

[16] *See, e.g.,* 77 P.S. §511.2(8)(ii) (defining "impairment rating" in terms of the degree of impairment to the "whole body," which obviously encompasses the brain and functioning); AMA Guides §1.3d (defining "impairment" to include deviation, loss, or loss of use of any . . . body function," which is separately defined under Section 1.3c to include "psychological functions"); *see also id.* at §§14.1b, 14.5 (discussing "psychiatric impairment").

the impairment be "due to" the compensable injury, *id.* §511.2(1).  Moreover, we do not find it to be at all unreasonable to believe that the Legislature intended to require a physician to render a detailed whole-person evaluation in order to support an ultimate termination of benefits for injured persons whose right to seek legal redress has been substantially limited, *see id.* §481(a), and who may remain permanently disabled in the traditional sense.[17]

Regarding Justice Wecht's position that a workers' compensation judge must determine causation for impairments, we reiterate that this directly contradicts Section 306(a.2)'s express directive that the degree of impairment due to the compensable injury is determined "based upon an evaluation by a physician . . . pursuant to the most recent edition of the [AMA Guides]."  *Id.* §511.2(1).  To the extent that the dissent is suggesting that workers' compensation judges and not physicians have the qualifications to render causation determinations, this overlooks the pervasive reliance

---

[17] To the extent that the dissents express concerns about malingering, notably, the General Assembly integrated a potent safeguard into the impairment-rating regime, via its prescription that conversions may only be subject to challenge upon a determination that a claimant meets the fifty-percent impairment threshold.  *See* 77 P.S. §511.2(4); *see also supra* note 4 and accompanying text.  The Commonwealth Court, however, has relieved claimants filing appeals within 60-days after notice of an automatic conversion of such condition, based upon the requirement that claimants be noticed of the conversion and attendant due process.  *See Johnson v. WCAB (Sealy Components Group)*, 982 A.2d 1253, 1257 (Pa. Cmwlth. 2009).  *See generally* Torrey & Greenberg, West's Pa. Prac., Workers' Compensation §6.48.50 (characterizing *Johnson* as a "remarkable case").  Although *Johnson* represents prevailing Pennsylvania precedent, it has not been subject to this Court's substantive review, and we believe that it would be unfortunate if the understanding of other key aspects of Legislature's intent in the impairment rating system (*i.e.*, the responsibility expressly invested in physician-examiners to determine the degree of impairment due to the compensable injury) were to be colored by an intermediate court's deviation (whether correct or incorrect) from the plain import of others.

by workers' compensation judges upon expert medical opinion testimony from physicians in the adjudicatory setting.

Certainly Section 306(a.2) introduced an innovation into the workers' compensation system by directing an automatic impact on benefits premised on a physician's determination, *see* 77 P.S. §511.2(2), thus displacing the conventional involvement of a judicial or quasi-judicial decision-maker in the adjustment of substantive liabilities. This substantial change, however, is dictated by the statute and not of this Court's own accord, and nothing in the statute supports the sort of parsing of the decision-making responsibility expressly allocated by the Legislature to physician-evaluators favored by Justice Wecht's dissent.

Notably, we have otherwise identified deficiencies in the impairment rating statute and suggested that the system is ripe for legislative review and adjustment. *See I.A. Constr. Corp.*, ___ Pa. at ___, 139 A.3d at 159-61. Unless and until this occurs, however, it is our considered judgment that courts should adhere as closely as possible to the existing statutory directives, subject to constitutional limitations, rather than supplementing and/or adjusting these based on judicial policymaking judgments. From our point of view, such restraint is particularly in order given the many compromises and tradeoffs inherent in a workers' compensation liability scheme, among competing interests which each are very important in their own right. *See id.* at 161.[18]

---

[18] In this regard, we note that the approach of tying the continuation of disability benefits to impairment rating protocols has been decried by many physicians and characterized as "unappealing, if not Orwellian" in commentary. DAVID B. TORREY & ANDREW E. GREENBERG, WEST'S PA. PRAC., WORKERS' COMPENSATION §6.51 (2008 & July 2016 Supp.) (quoting Nortin M. Hadler, *Impairment Rating in Disability Determination for Low Back Pain: Placing the AMA Guides and the Quebec Institute Report in Perspective*, in JOHN F. BURTON, JR. & TIMOTHY P. SCHMIDLE, WORKERS' COMPENSATION DESK BOOK I-132 (LRP Pubs. 1992)); *see also id.* at §6:48:50 (discussing controversy surround the AMA Guides, including the criticism that they lack any empirical basis). We make this (continued…)

Finally, to the extent that Justice Wecht's dissent suggests that the fourth edition of the AMA Guides to the Evaluation of Permanent Impairment does not permit the rating of mental and behavioral impairments, *see* Dissenting Opinion, *slip op.* at 6-7 (Wecht, J.), this is an issue of first impression in this Court which is well beyond the scope of this appeal. Nevertheless, we note that some other jurisdictions are in square disagreement with the dissent's position that the fourth edition "categorically rejects the use of impairment percentages in the context of mental disorders," *id.* at 6. *See Harvey v. H.C. Price Co.*, 957 A.2d 960, 962-68 (Me. 2008) (approving of the assignment of a percentage of impairment to the psychological component of an injury in a workers' compensation system requiring the use of the fourth edition for impairment rating purposes and explaining that the method for establishing a percentage was "a product of [the physician-evaluator's] medical training, clinical judgment, and application of the AMA *Guides*"). Alternatively, if assignment of impairment ratings pertaining to psychological impairments by evaluators is found to be impossible under the fourth edition, it may well be that the statute should simply be deemed incapable of enforcement as applied, and *no* conversions to partial disability should occur for claimants who suffer from serious work-related psychological impairments. *Accord* TORREY & GREENBERG, WEST'S PA. PRAC., WORKERS' COMPENSATION §6.52 (advocating such position).

In any event, as should be clear from the above, this case does not present questions pertaining to the fourth edition, and, unlike the dissent, we do not view these as overarching or disabling for present purposes. *See* Dissenting Opinion, *slip op.* at 6

---

(…continued)

observation not as an adoption of such viewpoint, but rather, to add perspective to our adherence to the specific statutory directives embodying the legislative policy choices that have been made in the impairment-rating arena.

(Wecht, J.). Rather, we believe this opinion addresses a matter that is important in its own right. Again, we hold that physician-examiners must exercise independent professional judgment to make a whole-body assessment of "the degree of impairment due to the compensable injury," 77 P.S. §511.2(1), which discernment cannot be withheld on the basis that the physician-examiner believes the undertaking is a more limited one.

The order of the Commonwealth Court is reversed, and the matter is remanded for reinstatement of the finding of invalidity rendered by the WCJ.


Justices Todd, Donohue, Dougherty and Mundy join the opinion.

Justice Baer files a dissenting opinion.

Justice Wecht files a dissenting opinion.