IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lauren M. Sanders, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Recordtrak, LLC (Workers' | : | |
| Compensation Appeal Board), | : | No. 163 C.D. 2022 |
| Respondent | : | Submitted: November 14, 2022 |

BEFORE: HONORABLE ANNE E. COVEY, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                                FILED: December 12, 2022

Lauren M. Sanders (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) January 26, 2022 order affirming WC Judge (WCJ) Bonnie Callahan's (WCJ Callahan) decision that granted Recordtrak, LLC's (Employer) Modification Petition, thereby modifying Claimant's WC benefits from total disability to partial disability status. Claimant presents two issues for this Court's review: (1) whether Act 111[1] is an unconstitutional delegation to the American Medical Association (AMA) and is in

    [1] Act of October 24, 2018, P.L. 714, No. 111 (Act 111). Act 111 repealed the unconstitutional impairment rating evaluation (IRE) provision and replaced it with a new IRE provision, Section 306(a.3) of the WC Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act 111, 77 P.S. § 511.3, that was virtually identical to the prior provision and effective immediately. Act 111 specifically incorporated and adopted the use of the American Medical Association's "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), for performing IREs.

violation of article II, section 1 of Pennsylvania's Constitution;[2] and (2) whether the AMA's "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009) (AMA Guides, 6th edition) insufficiently account for disabling pain or mental illness flowing from a work injury or medical treatment and, thus, do not provide a constitutional basis for assessing disability, and violate article II, section 1 and/or article I, section 11 of Pennsylvania's Constitution.[3] After review, this Court affirms.

On August 22, 2016, while in the course of her employment with Employer, Claimant sustained a work-related repetitive motion injury. On November 27, 2017, WCJ Debra Bowers (WCJ Bowers) approved a stipulation of the parties and awarded disability benefits for the injury described as a bilateral injury to wrists/arms (carpal tunnel) (status post-surgery) and aggravation of a preexisting cervical degenerative condition resulting in a decompression and anterior fusion C3-C7 (status post-surgery) involving a neck and shoulder injury.

On June 20, 2017, the Pennsylvania Supreme Court issued its decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 ( Pa. 2017), holding that the impairment rating evaluation (IRE) provisions contained in Section 306(a.2) of the WC Act (Act)[4] violated the nondelegation doctrine of the Pennsylvania Constitution and striking Section 306(a.2) in its entirety

---

[2] PA. CONST. art. II, § 1 ("[T]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.").

[3] Claimant inadvertently refers to article 1, section 10 of the Pennsylvania Constitution, PA. CONST. art. I, § 10 (relating to initiation of criminal proceedings). However, Claimant quotes from article I, section 11 of the Pennsylvania Constitution, PA. CONST. art. I, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay." "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."). *See* Claimant Br. at 15 n.4.

[4] Section 306(a.2) of the Act, added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, was repealed by Act 111, and replaced by Section 306(a.3) of the Act.

from the Act. The Pennsylvania legislature subsequently enacted Act 111, which became effective October 24, 2018. Act 111 repealed Section 306(a.2) of the Act, and reestablished the IRE process in Section 306(a.3) of the Act, 77 P.S. § 511.3. The IRE process has remained substantially the same as before, except that Act 111 requires that a physician use the AMA Guides, 6th edition, when performing an IRE and allows for modification to partial disability status if a claimant has a whole-body impairment of less than 35%.

On May 7, 2020, Kenneth Gentilezza, M.D. (Dr. Gentilezza) performed an IRE, as provided for in Section 306(a.3) of the Act, on Claimant. Dr. Gentilezza opined:

> Based upon my evaluation of [Claimant] today, review of the medical records provided and results of the diagnostic studies included within the records, it is my opinion, with[in] a reasonable degree of medical certainty, that the diagnoses responsible to define and explain the impairments she sustained as a result of repetitive trauma over time through her course of employment with documented work injury date of 8/22/[20]16 are consistent with the following:
>
> 1. Bilateral carpal tunnel syndrome status post bilateral carpal tunnel release[.]
>
> 2. Cervical radiculopathy C6, right side aggravated as a result of cervical injuries sustained from her employment with pre[]existing cervical spondylitic changes that were aggravated as a result of her work activities which led to the C6 radiculopathy as the documented radicular level with upper extremity symptoms noted bilaterally which is a combination of cervical spine and carpal tunnel syndrome.
>
> The diagnoses above are permanent impairments. Based upon the AMA Guides[, 6th edition,] definition of maximal medical improvement, it is my opinion, with[in] a reasonable degree of medical certainty, [Claimant] has achieved maximal medical improvement. There has been some discussion from the doctors at Main Line Spine

3

about the possibility of spinal cord stimulator. Although this may be an option for intervention, it is not one that will change [Claimant's] whole[-]person impairment percentage today as it is a pain reduction modality and will not have [an] impact on the impairment in general. This will not change with the insertion of a spinal cord stimulator, independent of the success.

Reproduced Record (R.R.) at 11a; *see also* WCJ Callahan Op. at 4-5 (Finding of Fact 5(g)). Dr. Gentilezza calculated Claimant's whole-body impairment as 25%. Consequently, on November 16, 2020, Employer filed the Modification Petition seeking to change Claimant's disability status from total to partial based on the May 7, 2020 impairment rating. Claimant opposed the Modification Petition on the grounds that Act 111 is unconstitutional.

WCJ Callahan held hearings on December 22, 2020, and March 22, 2021. On June 10, 2021, WCJ Callahan granted Employer's Modification Petition, concluding that Employer met its burden of proof under Act 111 for a modification of Claimant's disability status from total to partial effective May 7, 2020. Claimant appealed to the Board. On January 22, 2022, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[5]

Initially, Act 111 replaced former Section 306(a.2) of the Act with Section 306(a.3) of the Act, which declares, in pertinent part:

(1) **When an employe has received total disability compensation** . . . **for a period of [104] weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within [60] days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury, if any.** The degree of impairment shall be determined based upon

---

[5] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1172 n.3 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021).

4

an evaluation by a physician . . . pursuant to the [AMA Guides, 6th edition].

(2) **If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA Guides, 6th edition], the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits** . . . . **If such determination results in an impairment rating less than [35%] impairment under the [AMA Guides, 6th edition], the employe shall then receive partial disability benefits** . . . : Provided, however, That no reduction shall be made until [60] days' notice of modification is given.

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power . . . , the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed.

(4) An employe may appeal the change to partial disability at any time during the [500]-week period of partial disability[:] Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA Guides, 6th edition].

(5) Total disability shall continue until it is adjudicated or agreed . . . that total disability has ceased or the employe's condition improves to an impairment rating that is less than [35%] of the degree of impairment defined under the [AMA Guides, 6th edition].

(6) Upon request of the insurer, the employe shall submit to an [IRE] in accordance with the provisions of [S]ection 314 [of the Act] to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than [2] [IREs] under this clause during a [12]-month period.

(7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence

5

thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA Guides, 6th edition], for any injury or recurrence thereof.

77 P.S. § 511.3 (emphasis added).

Section 3 of Act 111 further provides, in relevant part:

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under [S]ection 306(a.3)(1) of the [A]ct, **an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph**. This section shall not be construed to alter the requirements of [S]ection 306(a.3) of the [A]ct.

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [A]ct, **an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph**.

Act 111, § 3(1), (2) (emphasis added).

Claimant first argues that Act 111 is an unconstitutional delegation to the AMA and is in violation of article II, section 1 of Pennsylvania's Constitution. However, Claimant asserts this argument solely "to preserve its viability for appellate purposes." Claimant Br. at 6. Claimant concedes:

[T]his precise argument has been addressed by [this Court] in *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019). The [*Pennsylvania AFL-CIO*] Court ruled the [AMA Guides, 6th edition] was ***not*** an unconstitutional delegation of legislative authority. Claimant also notes that this decision was affirmed by a brief *per curi[a]m* [O]rder of the Pennsylvania Supreme Court. As the [Board] note[d], this decision was

6

reaffirmed in *Hutchinson v. Annville Township ([Workers'
Compensation Appeal Board])*, 260 A.3d 360, 366 (Pa.
Cmwlth. 2021). In a recent case, *Hazzouri [v.]
Pennsylvania Turnpike Commission [(Workers'
Compensation Appeal Board) (*Pa. Cmwlth. No. 889 C.D.
2021, filed Apr. 28, 2022),] [this Court] once again
reaffirmed this ruling and rejected [Claimant's] position.[6]

Claimant Br. at 7-8. Based on the above, this Court rejects Claimant's argument and, consistent with this Court's precedent, holds that Act 111 is not an unconstitutional delegation to the AMA and does not violate article II, section 1 of Pennsylvania's Constitution.

Claimant next argues that the AMA Guides, 6th edition, insufficiently account for disabling pain or mental illness flowing from a work injury or medical treatment and, thus, do not provide a constitutional basis for assessing disability, as they fall short of the nuanced assessment necessary to evaluate each of Claimant's conditions and violate article II, section 1 and/or article I, section 11 of Pennsylvania's Constitution. Specifically, Claimant contends that, because the AMA Guides, 6th edition, measure impairment rather than disability, they do not provide sufficient criteria to evaluate these important resulting sequelae from particularly serious work injuries, which, as in this case, often result in unsuccessful surgeries. Claimant submits that the Pennsylvania Supreme Court discussed this issue in *Duffey v. Workers' Compensation Appeal Board (Troia-dyne, Inc.)*, 152 A.3d 984 (Pa. 2017), but it did not address the constitutional argument.[7]

Employer rejoins that while the courts have not yet addressed the sequelae issue, it does not apply to the instant case. Employer asserts that Claimant's injury description is clearly set forth in WCJ Callahan's decision and in Dr.

---

[6] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

[7] *Duffey* was decided on January 19, 2017, prior to the *Protz* decision and before Act 111 was enacted.

7

Gentilezza's IRE report. Employer emphasizes that Dr. Gentilezza referenced Claimant's pain complaints in his report, for which he applied calculation modifiers in reaching Claimant's final whole-body impairment rating.[8] Employer maintains that Claimant is asking that this Court reweigh Dr. Gentilezza's opinions and his impairment calculations, which is beyond this Court's scope of review, and such allegation should be rejected.

The issue before the Court in *Duffey* was whether an IRE report submitted by the employer was invalid because it did not address mental injuries which the WCJ newly added to the claimant's notice of compensation payable (NCP). Therein, the employer requested an IRE pursuant to former Section 306(a.2)(1) of the Act.[9] In its request for designation of a physician to perform the evaluation, the employer described the underlying compensable injury as bilateral hands-nerve and joint pain. A few months later, a specialist in physical medicine and rehabilitation (Physician-Evaluator) performed an IRE on the claimant. The Physician-Evaluator assigned a whole-body impairment rating of 6%, prompting the employer to issue a notice informing the claimant that his disability status would change from total to partial. Thereafter, the claimant filed a review petition challenging the validity of the IRE based on the fact that the Physician-Evaluator had failed to rate the full range of work-related injuries, since the claimant suffered from adjustment disorder with depressed mood and chronic post-traumatic stress disorder as a result of his work injury.

---

[8] "[Claimant] completed a Pain Disability Questionnaire as part of [the IRE] assessment scoring 134, which is consistent with grade 4 functional history grade modifier, described as pain and symptoms at rest limited to sedentary activity." R.R. at 9a; IRE Report at 4.

[9] Now Section 306(a.3)(1) of the Act, which is virtually identical to former Section 306(a.2)(1) of the Act, with the exception of requiring a whole-body impairment rating of 35%, rather than 50%, for total disability.

The WCJ, therein, directed that the claimant's psychological conditions be added to the NCP, and determined that the IRE was invalid, because the Physician-Evaluator had not addressed those conditions. Accordingly, the WCJ also found that the total disability status assigned to the claimant's WC benefits could not be modified. On appeal, the Board reversed the WCJ's decision to invalidate the IRE, reasoning that a physician-evaluator may properly limit an IRE according to the accepted injuries as reflected in an NCP. The Board observed that the claimant had not sought to amend the NCP to include additional injuries in a timely fashion but, instead, waited to do so until almost six months after the IRE was performed. The Board held that the 6% impairment rating assigned by the Physician-Evaluator was valid and, accordingly, modified the status of the claimant's WC benefits from total to partial disability.

On further appeal, this Court affirmed the Board's order. This Court emphasized that former Section 306(a.2) of the Act required a determination of the degree of impairment *due to the compensable injury*. This Court focused on the *compensable injury* component of this phrase, explaining that the NCP establishes the description of the work injury. In light of this approach, and given that an IRE involves an assessment of a claimant's condition at the time of the evaluation, this Court indicated that the focus in determining the validity of an IRE is on the state of the claimant and the compensable injury, **as described in the NCP** at the time the IRE is performed.

Our Supreme Court agreed with this Court's holding that an NCP should define *compensable injury* for purposes of this inquiry. However, such holding does not determine the range of impairments which may be *due to* such injury. Under former Section 306(a.2) of the Act and the applicable impairment guidelines, the physician-evaluator must exercise professional judgment to render

9

appropriate decisions concerning both causality and apportionment. Thus, the *Duffey* Court ruled:

> [T]here may be some basis in the AMA Guides permitting a physician-evaluator to attribute a claimant's psychological disorders to the event in which the claimant was injured, rather than to the compensable injury itself. Again, however, a physician-evaluator simply may not entirely disavow any and all responsibility to consider causality relative to a given condition.

*Duffey*, 152 A.3d at 989. Accordingly, the *Duffey* Court concluded:

> [T]he evaluative judgment is the touchstone on these subjects, as well as on the topic of causality. In the present case, since the [p]hysician-[e]xaminer failed to exercise such judgment based on a misunderstanding concerning the scope of his responsibilities, the WCJ did not err in invalidating the IRE.

*Id*. at 991. In other words, it is the physician-evaluator who determines the injuries at the time of the IRE, not the NCP. Consequently, the *Duffey* Court reversed this Court's holding, and remanded for reinstatement of the finding of invalidity rendered by the WCJ.

Herein, Claimant contends that, although the *Duffey* Court held that the IRE physician must exercise professional judgment to render appropriate decisions concerning both causality and apportionment, it left unspoken what the criteria would be for determining disability in exercising that judgment. It is that issue that Claimant raises on appeal. Employer retorts that, because Claimant's IRE was based on Claimant's work injuries as diagnosed by Dr. Gentilezza, rather than the injury description declared by WCJ Bowers, and Dr. Gentilezza did not diagnose Claimant with any *mental injuries and took into consideration Claimant's pain complaints in reaching his whole-body impairment*, this Court does not reach Claimant's issue.

10

This Court is constrained to agree with Employer. Had Dr. Gentilezza diagnosed Claimant with mental injuries of any kind, the issue presented (whether the AMA Guides, 6th edition, provide inadequate/no guidelines such that the legislature has unlawfully delegated the task of evaluating mental injuries for the purpose of assigning a whole-body impairment rating to physician-evaluators), would properly be before the Court. However, because Dr. Gentilezza did not diagnose Claimant with any mental injuries, this Court does not reach that issue.

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lauren M. Sanders,         :
         Petitioner    :
                        :
        v.            :
                        :
Recordtrak, LLC (Workers'    :
Compensation Appeal Board),   :   No. 163 C.D. 2022
         Respondent   :

## O R D E R

AND NOW, this 12th day of December, 2022, the Workers' Compensation Appeal Board's January 26, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge