**[J-60-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| VINCENT SICILIA | : | No. 14 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court dated June 7, |
| | : | 2022 at No. 747 CD 2021 Reversing |
| | : | the Order of the Workers' |
| API ROOFERS ADVANTAGE PROGRAM | : | Compensation Appeal Board dated |
| (WORKERS' COMPENSATION APPEAL | : | June 25, 2021 at No. A20-0734 and |
| BOARD) | : | Remanding. |
| | : | |
| | : | ARGUED: October 18, 2023 |
| APPEAL OF: API ROOFERS ADVANTAGE | : | |
| PROGRAM | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE WECHT**                                                    **DECIDED: July 17, 2024**

This Court's decision in *Duffey v. W.C.A.B. (Trola-dyne, Inc.)*[1] misinterpreted Section 306(a.2) of the Workers' Compensation Act. That provision instructs physicians conducting impairment rating evaluations ("IREs") to "determine the degree of impairment due to the [claimant's] compensable injury."[2] When an IRE takes place, a claimant's "compensable injury" has already been well-established, either because the employer long ago issued a notice of compensation payable ("NCP") or because a Workers' Compensation Judge long ago found a specific injury to be compensable. Thus, when the General Assembly directed IRE physicians to "determine the degree of impairment due to the compensable injury," it meant the compensable injury *for which the claimant has been receiving compensation.*

---

[1]     152 A.3d 984 (Pa. 2017).

[2]     77 P.S. § 511.3(1).

The *Duffey* Court nevertheless concluded that the legislature intended to give IRE physicians the authority to decide whether the claimant has any additional compensable injuries beyond those listed in the NCP—and then to rate those additional injuries.[3] Though nothing in the Act authorizes physicians to sit as junior-varsity WCJs, the *Duffey* majority created this result by conflating the concepts of "injury" and "impairment."[4] The decision also purported to rely upon the statutory mandate that IRE physicians must calculate the claimant's degree of "whole-body" or "whole-person" impairment.[5] But the *Duffey* majority badly misconstrued those concepts.[6]

We should accept Employer's invitation to overturn *Duffey* today. As I predicted in dissent, the decision has caused significant confusion regarding the proper scope of the IRE physician's evaluation.[7] *Duffey* injected so much uncertainty into the system that the

---

[3]    The *Duffey* majority held that IRE physicians must "apply professional judgment" and evaluate not only the compensable injury set forth in the NCP, but also any other injuries that the physician believes may be "fairly attributable" to that compensable injury. *Duffey*, 152 A.3d at 990. Notably, this novel construction of the Act was not one that the claimant in *Duffey* himself proposed. The interpretation was a judicial innovation. *See id.* at 998 (Wecht, J., dissenting).

[4]    *Id.* at 998 (Wecht, J., dissenting) ("The Majority's principal misstep is that it mislabels Duffey's psychological conditions, both of which are injuries in their own right, as 'impairments' that the IRE physician must diagnose and evaluate." (footnote omitted)).

[5]    *See, e.g.*, 77 P.S. § 511.3(8)(ii) ("For purposes of this clause, the term 'impairment rating' shall mean the percentage of permanent impairment of the whole body resulting from the compensable injury.").

[6]    *Duffey*, 152 A.3d at 999 (Wecht, J., dissenting) (explaining that impairment ratings must be expressed in terms of "the percentage of permanent impairment of the whole body" because the *Guides'* formulae differ across various organ systems and certain "regional" ratings must be converted into "whole-person" ratings); *see id.* ("The complete loss of a hand, for instance, is equivalent to 90% upper-extremity impairment, while the complete loss of an upper extremity is equivalent to 60% whole-person impairment.").

[7]    *See, e.g.*, *Sicilia v. API Roofers Advantage Program*, 277 A.3d 1213, 1221 (Pa. Cmwlth. 2022) (Leavitt, J., dissenting) (explaining that *Duffey* "has muddled the law in this area" by "tak[ing] the IRE into issues of liability and causation for a work injury when the
(continued…)

IRE physician in this case, at Employer's insistence, issued dual impairment ratings: one that evaluated only the established work injuries and another that included additional injuries that were never found to be compensable. This either-or approach completely defeats the purpose of conducting IREs, which are intended in many cases to be self-executing without the involvement of a WCJ.[8]

Apparently unwilling to fully rescind *Duffey*'s flawed holding, Justice Brobson and Chief Justice Todd would limit *Duffey* to its facts. Under that approach, *Duffey* would apply only when the claimant seeks to amend the description of the workplace injury post-IRE.[9] This reinterpretation of the holding in *Duffey* would restore to WCJs control over defining the claimant's compensable injury. It would not, however, fully repair the damage that *Duffey* has caused to the IRE process. Indeed, Justice Brobson and Chief Justice Todd would reaffirm that physician evaluators must "consider additional diagnoses reported by the claimant at the time of the IRE" even if they are "not included in the description of the accepted work-related injury."[10] What Justice Brobson's OISR ignores is that, had the IRE physician done exactly that in this case, she would have assigned Vincent Sicilia an artificially-inflated impairment rating that exceeded the statutory

sole purpose of an IRE is to determine the claimant's disability status after maximum medical improvement from the adjudicated work-related injury").

[8] If an employer requests an IRE within sixty days of the claimant's receipt of 104 weeks of total-disability benefits and the IRE yields an impairment rating of less than 35%, then the IRE is self-executing, meaning that the claimant's disability status can be modified from total to partial without the involvement of a Workers' Compensation Judge. 77 P.S. § 511.3(1). If the employer does not request the IRE within the sixty-day window, it can still seek to modify the claimant's benefits at any time, but it must file a modification petition and litigate the requested change in disability status. *See Gardner v. W.C.A.B. (Genesis Health Ventures)*, 888 A.2d 758, 767-68 (Pa. 2005).

[9] Justice Brobson's OISR at 26 ("Had Claimant desired to rely on the principles established by this Court in *Duffey*, Claimant should have filed a review petition seeking to amend the description of his work-related injury to include [his] additional diagnoses.").

[10] *Id.* at 25.

threshold for permanent disability, meaning that Employer never would have filed the modification petition in the first place.

Put simply, *Duffey* made two critical mistakes. It took away the authority of WCJs to define the claimant's compensable injury. And it gave physician evaluators permission to make a *de novo* assessment of the claimant's "compensable injury" at every single IRE. Remedying the former error without addressing the latter is only a partial fix. While Justice Brobson's approach is better than the status quo that *Duffey* wrought, the disruptive consequences arising from *Duffey*'s expansion of the physician-evaluator's proper scope would persist.

I would overturn *Duffey*.