**[J-60-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| VINCENT SICILIA | : | No. 14 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court dated June 7, |
| | : | 2022 at No. 747 CD 2021 Reversing |
| | : | the Order of the Workers' |
| API ROOFERS ADVANTAGE PROGRAM | : | Compensation Appeal Board dated |
| (WORKERS' COMPENSATION APPEAL | : | June 25, 2021 at No. A20-0734 and |
| BOARD) | : | Remanding |
| | : | |
| | : | ARGUED: October 18, 2023 |
| APPEAL OF: API ROOFERS ADVANTAGE | : | |
| PROGRAM | : | |

**OPINION IN SUPPORT OF AFFIRMANCE**


**JUSTICE DONOHUE**                                                      **DECIDED: July 17, 2024**

I agree with the Commonwealth Court's decision insofar as it held that Dr. Daisy Rodriguez was permitted under *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 152 A.3d 984 (Pa. 2017), to consider additional diagnoses as impairments that are due to compensable injuries. The Commonwealth Court's decision faithfully applied *Duffey* in that regard; it did not expand it. Furthermore, I also agree with the Commonwealth Court that the Workers' Compensation Judge ("WCJ") did not conduct a genuine credibility assessment of the evidence provided by Dr. Rodriguez regarding those additional diagnoses. However, I do not believe the Commonwealth Court should have reversed the WCJ's decision outright under these circumstances. Instead, the Commonwealth Court should have remanded this matter to the WCJ for an actual credibility assessment. For these reasons, I would affirm the Commonwealth Court insofar as it correctly applied *Duffey*. Had this Court reached a consensus on that point,

I would have also directed the Commonwealth Court to remand this matter to the WCJ for a credibility assessment.

## Workers' Compensation Act

An injury is compensable under the Workers' Compensation Act[1] when it arises in the course of employment, is related to that employment, and includes "such disease or infection as naturally results from the injury or is aggravated, reactivated[,] or accelerated by the injury[.]" 77 P.S. § 411(1). The employer and its insurer must promptly investigate each reported injury and "commence the payment of compensation due[.]" *Id*. § 717.1. A notice of compensation payable ("NCP") is the "agreement between an employer or an insurer and a claimant regarding liability for the claimant's injury." *Crozer Chester Med. Ctr. v. Dep't of Lab. & Indus., Bureau of Workers' Comp., Health Care Servs. Rev. Div.*, 22 A.3d 189, 197 (Pa. 2011). An NCP defines the compensable injury, and a WCJ "may, at any time, review and modify or set aside" an NCP. 77 P.S. § 771.

After receiving total disability for 104 weeks for a compensable injury, an employe is required to submit to an impairment rating examination ("IRE") if requested by the employer's insurer. *Id*. § 511.3(1). The IRE is conducted by a licensed physician-evaluator who is tasked with determining "the degree of impairment due to the compensable injury, if any." *Id*.

> If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than thirty-five per centum impairment under the American Medical Association "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009) ["AMA Guide"], the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits … . If such determination results in an impairment rating less than thirty-five per centum impairment under the

---

[1] Act of June 21, 1939, P.L. 520, *as amended*, 77 P.S. §§ 1-2710.

[AMA Guide], the employe shall then receive partial disability benefits.

*Id*. § 511.3(2).

### *Duffey*

In *Duffey*, this Court addressed whether NCPs circumscribe "the range of health-related conditions" that may be considered during IREs. *Duffey*, 152 A.3d at 985. Duffey's NCP described his injury as involving bilateral nerve and joint pain in his hands due to an electrical burn. *Id*. at 985-86. After receiving benefits for total disability for 104 weeks, Duffey submitted to an IRE requested by the employer. *Id*. at 985. The physician-evaluator assigned him an impairment rating of 6%, resulting in Duffey's workers' compensation benefits changing from total to partial disability. *Id*. at 986.

Duffey filed a review petition before the WCJ arguing that the IRE physician failed to rate all his work-related injuries because it did not address his mental health conditions that resulted from the injury defined in his NCP. *Id*. At a hearing before the WCJ, Duffey testified regarding his ongoing symptoms and treatment and supplemented that record with a deposition from his family doctor regarding treatment provided for his mental health conditions. *Id*. at 986-87. The employer relied on the IRE physician's testimony (who only evaluated the NCP injuries) and the testimony of its own expert. *Id*. at 987. The WCJ accepted Duffey's evidence as credible and rejected the conflicting evidence, directing that the NCP be modified to include the mental health conditions. The Workers' Compensation Appeal Board ("WCAB") overturned the WCJ's holding, and the Commonwealth Court affirmed the WCAB. In affirming the WCAB's decision, the Commonwealth Court ruled that an IRE is narrowly focused on impairment due to the compensable injury defined in the NCP and, therefore, did not extend to new or additional injuries that were not previously determined to be work related.

This Court rejected that view, observing that "a pervasive focus on 'compensable injury' has obscured an important aspect of the governing statute[,]" which is that it "explicitly invests in physician-evaluators the obligation to 'determine the degree of impairment due to the compensable injury[.]" *Id*. at 989 (quoting 77 P.S. § 511.2(1) (repealed October 24, 2018), now 77 P.S. § 511.3(1) (effective October 24, 2018)). We held in *Duffey* that in determining the "whole body" impairment resulting from the compensable injury, "a physician-evaluator must consider and determine causality in terms of whether any particular impairment is 'due to' the compensable injury." *Id*. We expressed no disagreement with the Commonwealth Court's holding that the NCP guides what constitutes a "compensable injury," but found that such a conclusion "simply does not determine the range of impairments which may be 'due to' such injury." *Id*.

Turning to the facts in *Duffey*, we determined that the physician-evaluator ignored "potential diagnoses and impairments" under the mistaken belief that impairments, rather than compensable injuries, were narrowly circumscribed by the NCP. *Id*. at 990. That constricted medical analysis deviated from the physician-evaluator's responsibility under the AMA Guide that is incorporated into the statute, which requires the physician to use his or her professional judgment to determine when the mental health consequences of an injury should be included when calculating the impairment rating. *Id*. We noted in *Duffey* that a great deal of confusion stemmed from conflation of the terms "injury"—which is defined in an NCP—and "impairment"—which is a related but distinct concept under the statutory scheme. *Id*. at 992-93.

**Factual and Procedural History**

In 1999, Appellee Vincent Sicilia ("Sicilia") was employed by Appellant API Roofers Advantage Program ("Employer") when he sustained work-related injuries after falling from a ladder. Employer issued an NCP accepting Sicilia's injuries as a lumbar strain

and left knee contusion and, in 2003, a WCJ approved a stipulation by the parties that expanded the scope of Sicilia's work-related injury in the NCP to include chronic pain syndrome and chronic adjustment disorder with anxiety and depression. In 2007, Sicilia underwent back surgery to alleviate the pain associated with his conditions and, during the next several years, the parties engaged in protracted litigation over Employer's liability for Sicilia's medical expenses due to the surgery. In 2011, a WCJ determined that Sicilia's surgical procedures were work-related.[2]

The instant matter began in August of 2019 when, upon Employer's request, Dr. Daisy Rodriguez conducted an IRE and found that Sicilia had reached maximum medical improvement on the NCP-defined injuries as of September of 2017. In applying the AMA Guides only to the NCP-defined injuries, Dr. Rodriguez assigned Sicilia a whole person impairment rating of 25%.[3] However, Dr. Rodriguez noted in Sicilia's IRE report that she was "unable to rate" additional spinal diagnoses that led to "surgical procedures after the 8/25/1999 work-related injury."[4] Based on the IRE report, Employer filed a petition to modify Sicilia's benefits from total to partial disability in October of 2019.[5] Dr. Rodriguez subsequently prepared an addendum report **at Employer's request**, in which she arrived

---

[2] The WCAB acknowledged that although the WCJ determined that Sicilia's back surgery was related to the NCP, the NCP was never amended.

[3] IRE Report for Vincent Sicilia, 8/1/2019, at 9 ("IRE Report"); *see also* Deposition of Dr. Daisy Rodriguez, 3/23/2020, at 13-37 ("Deposition" ) (explaining Dr. Rodriguez's process in calculating Sicilia's impairment rating of 25%). Dr. Rodriguez gave an initial impairment rating of 23%, which, based on the AMA guides, did not separately account for Sicilia's chronic pain syndrome. When she factored in the chronic pain syndrome, Dr. Rodriguez arrived at an impairment rating of 25%. The WCJ ultimately accepted the 25% rating. *See Sicilia v. API Roofers Advantage Program*, 277 A.3d 1213, 1215 (Pa. Commw. 2022).

[4] IRE Report at 9 n.* (unnumbered footnote).

[5] LIBC-378 Petition, 10/28/2019.

at a 45% impairment rating when the additional spinal diagnoses[6] were included in her analysis under the AMA Guide.[7] Dr. Rodriguez was deposed in March of 2020, at which time she stated, to a reasonable degree of medical certainty, that the spondylolisthesis diagnosis addressed in the Addendum IRE Report was causally related to Sicilia's work-related injury and that Sicilia had been suffering from it since 2001. Deposition at 53.

The WCJ found Dr. Rodriguez credible insofar as she arrived at an impairment rating of 25% in the original IRE Report. WCJ Decision, 8/24/2020, ¶ 10. However, the WCJ determined that her "testimony that [Sicilia]'s August 25, 1999 work related injury includes additional diagnoses is not accepted as credible" because the work-related injuries had "been described in numerous decisions, including the most recent decision of Judge Melcher in which the injury was described as a lumbar strain, left knee contusion, chronic pain syndrome and chronic adjustment disorder with anxiety and depression." *Id*. That is, the WCJ rejected Dr. Rodriguez's evaluation of spondylolisthesis because it was not listed in the NCP nor in any of the prior decisions that described the NCP-defined injuries. Accordingly, the WCJ granted Employer's petition to modify Sicilia's benefits on that basis.

Sicilia appealed to the WCAB, arguing that the WCJ had ignored or misapplied *Duffey* in rejecting Dr. Rodriguez's evaluation of his spondylolisthesis. *See* WCAB Opinion, 6/25/2021, at 7-8. The WCAB distinguished *Duffey* on the basis that Dr. Rodriguez had "clearly recognized" that the spondylolisthesis diagnosis that informed the

___

[6] Dr. Rodriguez identified additional spinal diagnoses of lumbar protrusion or spondylolisthesis with lumbar radiculopathy. I will use the term "spondylolisthesis" as shorthand for these two diagnoses. Employer does not contest that Sicilia suffers from spondylolisthesis; it only contests its obligation to pay for treatment for that condition.

[7] Addendum IRE Report for Vincent Sicilia, 2/22/2020 ("Addendum IRE Report"), at 2; *see also* Deposition at 42-53 (explaining Dr. Rodriguez's process in calculating Sicilia's impairment rating of 45%); *id*. at 48 (indicating that that the Addendum IRE Report was prepared at Employer's request).

45% impairment rating was distinct from the "accepted injury," which is "why she calculated different impairments." *Id*. at 8. The WCAB stated that "the WCJ, within her province as fact-finder, determined that the work injuries did not include additional conditions which had not been accepted or adjudicated and thus the 25% rating was a valid assessment." *Id*.

The Commonwealth Court reversed the WCAB's decision, finding that Dr. Rodriguez "misapprehended her responsibility" under Section 511.3 (as interpreted by *Duffey*) because she incorrectly believed, when producing the first IRE Report, that she was "constrained by the currently accepted diagnoses" in the NCP and prior WCJ holdings that did not include the spondylolisthesis diagnosis identified in the Addendum IRE Report. *Sicilia v. API Roofers Advantage Program*, 277 A.3d 1213, 1218 (Pa. Commw. 2022). The court rejected arguments by Employer that "boil down to an assertion that the decision of a WCJ describing the injuries controls the IRE process." *Id*. at 1219. The court recognized that while the WCJ had the authority to make credibility determinations regarding the spondylolisthesis diagnosis, the WCJ's rejection of the higher impairment rating was not a credibility determination at all, but instead a "misapprehension" of Dr. Rodriguez's discretion to consider Sicilia's spondylolisthesis in conducting the IRE. *Id*. On that basis, the Commonwealth Court reversed the WCAB's decision and remanded for reinstatement of total disability benefits. *Id*.

Judge Mary Hannah Leavitt dissented, contending that the WCJ's credibility assessment was proper even if it had relied in part on the "well-established nature" of Sicilia's work injury. *Sicilia*, 277 A.3d at 1220 (Leavitt, J., dissenting). Judge Leavitt asserted that the WCJ never stated that she "was constrained in either credibility determination" by prior decisions regarding the accepted injuries when crediting the 25%

rating and discrediting the 45% rating.  *Id*.  Judge Leavitt also argued that *Duffey* should be reconsidered.  *Id*. at 1220-21.[8]

## Analysis

I agree with the Commonwealth Court's determination that, under *Duffey*, Dr. Rodriguez was permitted to consider the spondylolisthesis diagnosis during Sicilia's IRE when calculating his impairment rating.  It was Dr. Rodriguez's professional medical opinion that Sicilia's spondylolisthesis was 'due to' the NCP-defined workplace injuries.  As this Court explained in *Duffey*, while the NCP defines the compensable injury, that "simply does not determine the range of impairments which may be 'due to' such injury."  *Duffey*, 152 A.3d at 989.  Under 77 P.S. § 511.3(1), the "physician-evaluator must exercise professional judgment to render appropriate decisions concerning both causality and apportionment" of identified impairments.  *Id*.  That is precisely what occurred here.  When Dr. Rodriguez calculated Sicilia's impairment rating after considering all impairments that were due to the compensable injuries defined in the NCP, she arrived at the higher impairment rating.  Only by conflating the related concepts of "injury" and "impairment" under the statutory scheme could Dr. Rodriguez ignore Sicilia's spondylolisthesis to arrive at the lower rating.  In *Duffey*, this Court specifically ruled that strictly conflating those terms was inconsistent with the statutory text of the Workers Compensation Act.  *Duffey*, 152 A.3d at 992-93.

While the WCJ purported to find Dr. Rodriguez's Addendum IRE Report and related deposition testimony not credible, it is clear the WCJ rejected the spondylolisthesis diagnosis as an impairment only because it was not listed in the NCP and prior decisions describing the NCP.  But Dr. Rodriguez was tasked with determining

---

[8]  Judge Leavitt argued that *Duffey* "has muddled the law in this area," relying largely on Justice Wecht's dissent in *Duffey*.  *Sicilia*, 277 A.3d at 1221.

impairments due to the NCP injuries, and the Addendum IRE Report and her related testimony did not suggest otherwise. The Addendum IRE Report indicated that Sicilia was suffering from the additional spinal diagnoses as "conditions secondary" to the 1999 work injury. Addendum IRE Report at 1. Dr. Rodriguez did not suggest that spondylolisthesis was an additional compensable **injury** that Sicilia had suffered during the 1999 incident. Rather, she observed that the fusion and decompression surgeries in 2007 must have been conducted to address spondylolisthesis, because those surgeries made no sense as direct treatments for any of the NCP-defined injuries. Deposition at 58-60. Thus, the WCJ's rejection of Dr. Rodriguez's Addendum IRE Report and related testimony was not a credibility assessment; it was an incorrect legal determination that additional diagnoses could not be considered during an IRE if those diagnosis were not specifically identified as injuries in the NCP. As discussed above, that sort of legal analysis was specifically rejected in *Duffey* because it conflates the related concepts of injuries and impairments under the Workers' Compensation Act.

Moreover, rather than contradicting the Addendum IRE Report, the history of decisions related to Sicilia's benefits corroborate it. The WCJ's myopic reading of that history was that the NCP had never been amended in the wake of litigation regarding the 2007 surgeries, but that is not all that the prior decisions in this case revealed. Employer was held responsible for paying for those surgeries after another WCJ ("2011 WCJ") found that the surgeries were "causally related to the treatment of [Sicilia]'s August 25, 1999 work injury[]." 2011 WCJ Decision, 12/19/2011, at 1, ¶ 2 (finding credible expert medical testimony of that causal relationship, while simultaneously rejecting expert testimony to the contrary); *see also id.* at 2, ¶ 4 ("Having now found herein that such September 2007 surgical and hospital bills are actually related to [Sicilia]'s accepted work injury, Employer should pay them subject to the Medical Cost Containment

Regulations[.]").  The spondylolisthesis diagnosis identified by the 2011 WCJ is the very same impairment identified by Dr. Rodriguez in the Addendum IRE Report.  *Id*. ¶ 3.

Thus, Dr. Rodriguez did not manufacture a new workplace injury.  She examined the medical records in this case, in conjunction with her physical examination of Sicilia, and unsurprisingly determined that Sicilia's impairment "due to" the NCP-defined injuries included spondylolisthesis, treatment for which Employer had already been held responsible.  Employer could not have been surprised by the result of Dr. Rodriguez's supplemental evaluation, not only because it specifically requested the Addendum IRE Report, but more importantly because Employer unsuccessfully challenged the 2011 WCJ's determination of that causal relationship between the 2007 surgeries and the 1999 work injury in its appeal from the 2011 WCJ's decision.  *See* WCAB Opinion, 10/23/2013, at 2 ("[Employer] argues that the WCJ erred in determining that Sicilia's 2007 surgery was work-related.  We disagree.").  The WCAB accepted the 2011 WCJ's determination that the 2007 surgeries were not "obviously" related to the 1999 work injury and, thus, that Sicilia bore the burden to show by "unequivocal medical evidence" that the surgery was related to that injury.  *Id*. at 8.[9]  The WCAB agreed with the 2011 WCJ that Sicilia met that high burden of proof.  *Id*.[10]

In rejecting the Commonwealth Court's decision in this case, the OISR first contends that "*Duffey* was never intended to eliminate the WCJ's exclusive role to determine the nature and extent of a claimant's work-related injury through her

---

[9]  *See Lewis v. Commonwealth*, 498 A.2d 800, 802 (Pa. 1985) ("Where there is no obvious causal connection between an injury and the alleged cause, that connection must be established by unequivocal medical testimony.").

[10]  However, the WCAB also agreed with the 2011 WCJ that Sicilia was not entitled to an award of penalties for Employer's initial failure to pay for the surgeries because the causality decision essentially came down to a battle of the experts, making Employer's challenge to payment reasonable at the time.  *See* WCAB Opinion at 10.

determinations of credibility and evidentiary weight." OISR at 24-25 (Brobson, J.).[11] This is true, but, as explained above and as held by the Commonwealth Court, the WCJ here did not make a credibility determination, it made a legal determination that Dr. Rodriguez was not permitted to consider spondylolisthesis as an impairment affecting the IRE. If Dr. Rodriguez had purported to amend the NCP-defined work injury to include spondylolisthesis, that would have clearly constituted an expansion of *Duffey*. That did not occur. Dr. Rodriguez simply followed the previous decisions in this case, wherein Sicilia already proved with unequivocal medical evidence that his 2007 surgery—for spondylolisthesis—was causally related to his 1999 workplace injury.

The only difference between that 2011 WCJ determination (as affirmed by the WCAB in 2013) and the instant matter is that the prior causality determination was made for purposes of determining Employer's obligation to pay for specific medical care, whereas the IRE determines Sicilia's level of impairment. It is both absurd and unjust that Dr. Rodriguez could not consider Sicilia's spondylolisthesis in assessing his impairment rating during the IRE merely because the NCP was never amended to include that condition; Employer was required to pay for Sicilia's surgery for spondylolisthesis after a specific determination that it was causally related to his 1999 work injury. The 2011 causality determination did not expire merely because Sicilia did not amend the NCP, and Employer was on notice of its obligations regarding Sicilia's spondylolisthesis since that time.

Next, the OISR justifies this inequity by stating that *Duffey* was limited to its "unique circumstances," where "during the IRE proceedings, the claimant sought to litigate before the WCJ the extent of his work-related injury and, in doing so, introduced his own medical evidence to establish that a material mistake of fact or law was made at the time the

---

[11] I refer solely to Justice Brobson's OISR in this opinion.

NTCP/NCP was issued or that the scope of the work-related injury had changed." OISR at 25. But we did not limit our ruling in *Duffey* to the narrow procedural posture of that case. To the contrary, the ruling was premised on a direct reading of the statutory text. *Duffey*, 152 A.3d at 988 (stating "[w]e find the outcome of this case to be controlled by straightforward statutory interpretation").

Furthermore, although we explicitly acknowledged in *Duffey* that an NCP "should define 'compensable injury' for purposes of" an IRE, we found that the compensable injury "simply does not determine the range of impairments which may be 'due to' such injury." *Id*. at 989. Thus, the essence of *Duffey* is that some conditions (in that case, it was Duffey's psychological disorders) can be impairments under the statutory scheme defining the IRE process despite not being defined as compensable injuries in an NCP.[12] I read *Duffey* to hold that, regardless of whether a condition could have been added by amendment of the NCP, the NCP cannot be read, for purposes of a physician-evaluator's responsibilities during an IRE, to fully circumscribe the range of impairments that a physician-evaluator must consider. It is true that in *Duffey* the WCJ ultimately exercised its authority to order amendment of the NCP to include Duffey's psychological conditions. However, at no point did *Duffey* suggest that amendment of the NCP was a condition precedent to the physician-evaluator's consideration of those psychological conditions for purposes of the IRE. To the contrary, we stated that "physician-evaluator simply may not

---

[12] As we explained in *Duffey*, psychological impairments could hypothetically stem directly from an event that caused a work injury but, in Duffey's case, the expert testimony described "an ongoing pain syndrome originating in [his] hands, as well as a failure to improve from physical impairments, yielding **derivative psychological conditions**." *Duffey*, 152 A.3d at 989 n.8 (emphasis added). Likewise, although Sicilia's additional spinal diagnoses could independently constitute a compensable injury, that is not what was suggested by Dr. Rodriguez's report; she described those diagnoses as "conditions secondary" to the 1999 work injury. Addendum IRE Report at 1. Thus, here, as in *Duffey*, we are concerned with conditions that are due to the NCP-defined work injuries, yet manifest at a later time as impairments.

entirely disavow any and all responsibility to consider causality relative to a given condition." *See Duffey*, 152 A.3d at 989. If a physician-evaluator can never consider a condition not listed in an NCP, there would be no need to determine causality at an IRE. That statement only makes sense if some conditions can constitute impairments even though they are not listed in the NCP, but only insofar as the physician-evaluator (subject to the credibility assessment of the WCP) can establish causality between the impairment and an NCP-defined work injury.

Here, the OISR's reading of *Duffey* appears to align far more with the Dissents in *Duffey* than with its Majority. Justice Baer opined in dissent in *Duffey* that the IRE physician "properly limited his evaluation to the impairments associated with the compensable injury set forth in the NCP." *Duffey*, 152 A.3d at 997 (Baer, J., dissenting). Justice Wecht also disagreed with the Majority's holding that an IRE physician could consider conditions as impairments that were not explicitly listed in an NCP. *Duffey*, 152 A.3d at 998 (Wecht, J., dissenting) ("The Majority's principal misstep is that it mislabels Duffey's psychological conditions, both of which are injuries in their own right, as 'impairments' that the IRE physician must diagnose and evaluate.") (footnote omitted). Reading the OISR today, one might rationally assume that the Dissents had prevailed in *Duffey*. They did not. The OISR cannot purport to uphold *Duffey* while effectively adopting the *Duffey* Dissents' rejection of *Duffey*'s core holding—that injuries and impairments are distinct (albeit related) concepts under § 511.3(1).

Moreover, the attention paid by the OISR toward the origin of the dispositive evidence in *Duffey* should also have no bearing in this case. It simply does not matter in the circumstances before us today that Duffey proffered his own expert testimony after his IRE to contest his impairment rating. Here, the physician-evaluator herself provided the relevant report and testimony that justified the higher impairment rating relied upon

by Sicilia. Indeed, Dr. Rodriguez produced the Addendum IRE Report **at Employer's request**. The OISR offers no cogent explanation as to why this distinction makes a difference. In any event, Sicilia had already offered his own expert evidence to demonstrate that his spondylolisthesis was directly related to his work injury during the prior litigation over his 2007 surgeries. The 2011 WCJ accepted that causality determination, as affirmed by the WCAB in 2013.

The OISR is also wrong to suggest a significant distinction on due process grounds between *Duffey* and the instant case because causality was litigated in *Duffey* after notice and the opportunity to be heard, whereas here, Employer ostensibly had no notice or opportunity to challenge Sicilia's spondylolisthesis diagnosis or its relation to the 1999 work injury. The record here refutes these illusory due process concerns. Dr. Rodriguez's causality determination in the Addendum IRE Report flowed directly from the prior litigation in this case. Employer had notice of Sicilia's spondylolisthesis as far back as 2007, and it engaged in protracted but unsuccessful litigation to challenge its responsibility to pay for Sicilia's surgeries that were necessarily premised on that diagnosis. Thus, contrary to the OISR's view, there are no "due process concerns" that arise out of the Commonwealth Court's application of *Duffey* to this case. OISR at 25.

What does distinguish this case from *Duffey* is that the WCJ here rejected the evidence that supported the higher impairment rating, whereas the WCJ in *Duffey* accepted evidence that supported a higher rating. However, here, the WCJ's decision cannot be fairly construed as a credibility determination regarding the quantity or quality of the evidence supporting the spondylolisthesis diagnosis and its causal connection to Sicilia's 1999 work injury. The WCJ's decision was based on an incorrect legal determination that Dr. Rodriguez was not permitted to consider impairments not listed as injuries in the NCP. As correctly determined by the Commonwealth Court, that limitation

on Dr. Rodriguez's evaluation violated *Duffey*, which explicitly requires a physician-evaluator to consider impairments not listed as injuries in the NCP, **if** those impairments are causally related to the work injuries defined in the NCP. That distinction does not involve an expansion of *Duffey*, but it does demonstrate what the Commonwealth Court got wrong here.

Although the Commonwealth Court correctly held that the WCJ rejected the higher impairment rating evidence based on "a misapprehension of the discretion accorded an IRE physician-evaluator" under our interpretation of the Workers' Compensation Act in *Duffey*, its decision to remand for reinstatement of total disability benefits without any further proceedings does not flow directly from that holding. *Sicilia*, 277 A.3d at 1218. Because the WCJ rejected the Addendum IRE Report and Dr. Rodriguez's related deposition testimony on an incorrect legal basis, the WCJ never actually assessed the credibility of that evidence. Accordingly, contrary to the disposition of the Commonwealth Court, I would instead order reinstatement of total disability benefits pending the outcome of an actual credibility assessment by the WCJ on remand.[13]

Justices Dougherty and Mundy join this opinion in support of affirmance.

---

[13] Although I believe the law of the case applies here insofar as Sicilia's spondylolisthesis diagnosis was already determined to be causally related to his work injury during the litigation over his 2007 surgeries, the credibility of Dr. Rodriguez's evaluation of Sicilia's impairment for purposes of the IRE may involve issues beyond causation alone and, therefore, remand would have been appropriate for an assessment of credibility in the first instance had this Court reached a consensus. Given this Court's disposition, the remedy provided by the Commonwealth Court stands.