IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| City of Philadelphia, <br>            Petitioner <br><br>      v. <br><br> Lamont Turner (Workers' <br> Compensation Appeal Board), <br>            Respondent | : <br> : <br> : <br> :   No. 1190 C.D. 2023 <br> : <br> :   Argued: June 4, 2024 <br> : <br> : <br> : <br> : |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MATTHEW S. WOLF, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH               FILED: October 17, 2024

The City of Philadelphia (Employer) petitions for review from the October 6, 2023 Opinion and Order of the Workers' Compensation Appeal Board (Board), which affirmed the January 23, 2023 Decision and Order of Workers' Compensation Judge (WCJ) Audrey Timme (WCJ Timme). WCJ Timme denied Employer's Modification Petition in which it sought to reduce Lamont Turner's (Claimant) workers' compensation benefits status from total temporary disability (TTD) to partial temporary disability (PTD) based on an impairment rating evaluation (IRE) conducted on December 15, 2021. WCJ Timme rejected the testimony of the IRE physician-evaluator and, resultantly, concluded that Employer did not carry its burden to prove that Claimant's whole-person impairment rating was less than 35% as required by Section 306(a.3) of the Workers' Compensation Act (Act).[1] Upon review, we affirm.

---

[1] Section 306(a.3) of the Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of October 24, 2018, P.L. 714, 77 P.S. § 511.3.

## I.    FACTS AND PROCEDURAL HISTORY

On March 3, 2006, Claimant was injured in the course and scope of his employment as a corrections officer for Employer. (Reproduced Record (R.R.) at 10a, 43a.) After two prior WCJ decisions in 2007 and 2013, on May 20, 2021, WCJ Erin Young (WCJ Young) issued a decision granting in part and denying in part a termination petition filed by Employer alleging that Claimant had fully recovered from his work injury. *Id.* at 10a, 43a.[2] WCJ Young noted that Claimant's injury at that time was described as "strain, contusion of the lumbar spine, bilateral feet and left hip" together with a "patellar strain/sprain with exacerbation of pre[]existing left patellar tendon rupture." *Id.* at 10a, 43a. WCJ Young found that Claimant had fully recovered from his left knee, left hip, and bilateral feet injuries as of January 6, 2020, but further concluded that Claimant had *not* fully recovered from his low back injury. *Id.* at 10a, 47a-48a. Claimant accordingly continued to receive TTD benefits.

On January 3, 2022, Employer filed the Modification Petition, seeking to reduce Claimant's benefits status from TTD to TPD based on the December 15, 2021 IRE of Dr. Guy Fried. Hearings were held before WCJ Timme on February 7, 2022, and September 1, 2022, at which WCJ Young's May 20, 2021 decision and Dr. Fried's deposition testimony were submitted into evidence. (Certified Record (C.R.) at Document Nos. 9, 10.) Attached to Dr. Fried's deposition transcript was his December 27, 2021 written IRE report (Fried Report). (R.R. at 110a-17a.) Neither Claimant nor Employer introduced any other evidence. *Id.*

Dr. Fried is board certified in physical medicine and rehabilitation, brain injury medicine, pain management, electrodiagnostic medicine, and spinal cord injury medicine. *Id.* at 58a. In performing his IRE, Dr. Fried reviewed

---

[2] WCJ Timme referenced WCJ Young's decision as being circulated on May 25, 2021. (Reproduced Record (R.R.) at 10a.) WCJ Young's decision was in fact circulated on May 20, 2021. *Id.* at 41a.

Claimant's treatment records and diagnostic study reports going back to the date of injury in March 2006. Dr. Fried also reviewed WCJ Young's May 20, 2021 decision and the medical expert reports and deposition testimony introduced at the hearing before WCJ Young. *Id.* at 58a-60a. Dr. Fried conducted a physical examination of Claimant, during which Claimant reported that he was experiencing depression, anxiety, erectile dysfunction, urinary incontinence, and significant weight gain. *Id.* at 62a.

Based on his evaluation, Dr. Fried concluded that Claimant had reached maximum medical improvement, which he understood, pursuant to the American Medical Association "Guides to the Evaluation of Permanent Impairment," Sixth Edition (second printing April 2009) (AMA Guides), to mean that Claimant's condition had stabilized and likely would not improve or worsen substantially in the following year either with or without treatment. *Id.* at 63a. Dr. Fried did not evaluate or rate Claimant's prior knee, hip, and foot injuries, as WCJ Young had found that Claimant had fully recovered from them. Dr. Fried therefore evaluated only Claimant's low back injury, lumbar radiculopathy. *Id.* at 65a, 116a. Based on the AMA Guides, Dr. Fried calculated Claimant's whole-person impairment rating to be 31%. *Id.* at 66a. Regarding Claimant's other conditions, Dr. Fried testified as follows:

> Q. [Employer's Counsel]    Am I correct that you did not rate [Claimant's] left knee, left hip, bilateral feet [injury] or depression, anxiety, erectile dysfunction or incontinence that he spoke to you about?
>
> A. [Dr. Fried]    That's correct.
>
> Q.    Why not?
>
> A.    It was not listed in the [Workers' Compensation Automation and Integration System (WCAIS)]. It was not listed by [WCJ] Young. It was not my understanding that

3

it was accepted as the injury, so I am trying to go by the rules.

He certainly expressed his opinion and, you know, certainly has had a changed body over the last years but I was going within the rules of the rating . . . .

Q. When calculating his whole[-]person impairment, did you take into consideration both his subjective complaints and findings upon physical examination?

A. Yes.

. . . .

[Cross-examination by Claimant's counsel]

Q. At the bottom [of page 7 of the Fried Report], you note some of the things that [Claimant] had been telling you he had been dealing with since the work injury, including the urinary incontinence.

Is urinary incontinence the type of problem that can be associated with a herniated disc?

A. Yes.

. . . .

Q. On [p]age 8 [of the Fried Report], it references that [Claimant] gained about 115 pounds since this happened to him. Correct?

A. Correct.

Q. With a low back injury, would it be fair [to say] that people would have a difficult time being mobile or physically active, keep in training and keep [ ] in [a] working-out-type program?

A. Yes.

Q. It's not unreasonable to associate a weight gain to a lack of mobility; is that correct?

A. No. It's certainly associated.

Q. And it's also fair to associate hypertension and obesity—the development, rather, of hypertension and obesity?

4

A. Certainly can be, yes.

. . . .

Q. And the same would hold for anxiety and depression doctor. [In] [y]our long practice, it's not unusual for people who have a chronic long-term injury to become anxious and/or depressed. Correct?

A. Correct.[3]

(R.R. at 66a-67a, 69a-71a.) Dr. Fried also noted that, when calculating a patient's whole-person impairment rating, "you always give the patient the benefit of the doubt. If you can calculate in three methods, you choose the most generous method to give the patient." *Id.* at 64a.

In her decision, WCJ Timme reviewed in detail the evidence presented and made the following pertinent findings concerning the basis of Dr. Fried's IRE:

4. This [WCJ] has carefully reviewed the medical evidence of record and relevant case law and finds the opinion of Dr. Fried to be internally inconsistent and not competent or credible. In so finding, this [WCJ] notes that Dr. Fried admittedly did not rate the depression, anxiety, erectile dysfunction and incontinence that Claimant reported but nevertheless testified that he considered

---

[3] In his report, Dr. Fried noted that Claimant stated that he believed his urinary incontinence, obesity, erectile dysfunction, anxiety, and depression should be considered as part of his work injury. (Fried Report, 7-8; R.R. at 116a-17a.) Dr. Fried further noted:

Looking on the WCAIS site, his low back injury is the only injury that is covered. Without clearly allowing the expansion to cover his other injuries, I will conservatively interpret this as counting only his lumbar radiculopathy. **[Claimant]'s low back injury radiculopathy results in a whole[-]person permanent impairment of 31 [%].**

If the injury were accepted beyond the lumbar radiculopathy to include his left knee, erectile dysfunction, obesity, depression, and anxiety, his whole[-]person impairment would increase likely above 35 [%]. Without the expressed WCAIS documentation and workout of these conditions, I will not include these in his [IRE].

*Id.* at 117a (emphasis in original).

Claimant's subjective complaints in calculating Claimant's whole[-] person impairment. Additionally[,] he did not rate the depression, anxiety, erectile dysfunction and incontinence because he was constrained to "follow the rules of the rating," which he understood was to rate only the accepted work injuries. Dr. Fried therefore "misapprehended" the discretion [afforded] an IRE physician-evaluator to "exercise professional judgment to render appropriate decisions concerning both causality and apportionment." *Sicilia v. API Roofers Advantage Program* [*(Workers' Compensation Appeal Board)*], 277 A.3d 1213, 1217-18 (Pa. Cmwlth. 2022) [(*Sicilia I*), *aff'd by evenly divided court*, 318 A.3d 803 (Pa. 2024) (*Sicilia II*)[4]] (citing[, in part,] [*Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*], 152 A.3d 984 (Pa. 2017) (*Duffey II*)].

5. Employer failed to meet its burden of proof that Claimant's disability status should be modified to [TPD] based on the December 15, 2021 [IRE] of Dr. [ ] Fried. Employer's Modification Petition will be denied.

(WCJ Timme Findings of Fact (FOF) 4-5; R.R. at 13a.) WCJ Timme accordingly denied the Modification Petition and directed that Claimant's benefit status remain as TTD. (WCJ Timme Order; R.R. at 15a.)

Employer appealed to the Board, arguing that WCJ Timme's findings and conclusions regarding Dr. Fried's testimony were erroneous, inconsistent, arbitrary and capricious, and not based on substantial evidence. (R.R. at 16a.) Specifically, Employer argued that both *Duffey II* and *Sicilia I* are distinguishable in this case, in part because Claimant neither testified nor presented any medical testimony regarding the additional conditions Dr. Fried omitted from his impairment rating. *Id.* Employer also argued that the record contains no evidence that including

---

[4] The Pennsylvania Supreme Court decided *Sicilia II* on July 17, 2024, during the pendency of this appeal.

these additional conditions would have resulted in a rating equal to or greater than 35%. *Id.*

The Board affirmed, concluding that WCJ Timme's findings regarding Dr. Fried's testimony involved credibility and evidentiary weight, which are matters reserved to the WCJ's discretion. The Board noted that, although Dr. Fried considered Claimant's subjective complaints, he specifically did not include Claimant's depression, anxiety, erectile dysfunction, or incontinence in his whole-person impairment rating because those conditions had not been accepted as part of the description of Claimant's work injury. *Id.* at 29a. Further, although Dr. Fried agreed that such conditions can be associated with a low back injury, he nevertheless did not testify to any causal relationship between them and Claimant's injury. *Id.* The Board ultimately concluded that, because Dr. Fried's opinions were internally inconsistent and out of line with the holdings in *Duffey II* and *Sicilia I*, WCJ Timme's rejection of them was not arbitrary or capricious. *Id.* at 29a-30a.[5]

Employer now petitions this Court for review.

## II. QUESTIONS PRESENTED

Employer presents a single question in this appeal, namely, whether the Board erred in affirming WCJ Timme's decision denying Employer's Modification

---

[5] Board Chairman Alfonso Frioni, Jr. wrote a concurring opinion, joined by Commissioners Crawford, Gabig, and Thrasher, in which Chairman Frioni expressed ongoing concerns with the practical difficulties that the majority holdings in both *Duffey II* and *Sicilia I* will cause in the IRE process. Chairman Frioni opined that the description of a claimant's compensable work injury, which under the Act is readily modifiable, should strictly determine what conditions are considered in an IRE impairment rating. (R.R. at 31a-33a.) *See also id.* at 33a ("The Act, read and interpreted as a whole[,] clearly entrusts the adjudication of the nature and extent of an injury, as well as its nexus to the work incident or injury, premised on expert evidence and testimony, solely to the WCJ, not to an IRE physician[-evaluator]."), 34a ("It should not be the job of the IRE physician[-evaluator] to ferret out what conditions may be attributable to the compensable injury based on comments made by the claimant during the IRE.").

7

Petition. More specifically, Employer contends that WCJ Timme both erred as a matter of law in applying *Duffey II* and *Sicilia I* and rendered arbitrary and capricious findings regarding Dr. Fried's medical testimony.

## III.  DISCUSSION[6]

### A.  The Act

We begin with the Act. Section 306(a.3) of the Act provides that, after a claimant has received TTD for a period of 104 weeks, unless otherwise agreed, the claimant shall submit to an IRE to "determine the degree of impairment due to the compensable injury." 77 P.S. § 511.3(1). The degree of the claimant's impairment is determined by a qualified physician-evaluator pursuant to the AMA Guides. *Id.* If the physician-evaluator determines that the claimant has a whole-person impairment rating equal to or greater than 35%, the claimant shall continue receiving TTD. *Id.* § 511.3(2). If the claimant's whole-person impairment rating is determined to be less than 35%, the claimant's benefits status may be reduced to TPD. *Id.*

### B.  *Duffey II* and *Sicilia I & II*

In *Duffey II*, the Pennsylvania Supreme Court considered whether an IRE physician-evaluator fulfilled his obligations under former Section 306(a.2) of the Act, *formerly* 77 P.S. § 511.2,[7] where the physician-evaluator, in calculating the

---

[6] Our review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000).

[7] Former Section 306(a.2), added by the Act of June 24, 1996, P.L. 350, and repealed by the Act of October 24, 2018, P.L. 714, was stricken in its entirety in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017), as an unconstitutional delegation of legislative authority. The IRE provisions of former Section 306(a.2) that are pertinent to this appeal were reenacted in Section 306(a.3) without substantial modification.

8

claimant's whole-person impairment rating, did not specifically consider the claimant's reported psychological conditions of adjustment disorder, depressed mood, and chronic post-traumatic stress disorder. 152 A.3d at 985, 987. The physician-evaluator excluded those conditions from his impairment rating because he did not have the requisite expertise to assess them and was not asked to do so. *Id.* at 987.

The Supreme Court in *Duffey II* explained that former Section 306(a.2), now Section 306(a.3), "explicitly invests in physician-evaluators the obligation to 'determine the degree of impairment *due to* the compensable injury[.]'" 152 A.3d at 989 (citing former Section 306(a.2), 77 P.S. § 511.2) (emphasis in original). "Per such express terms, a physician-evaluator must consider and determine causality in terms of whether any particular impairment is 'due to' the compensable injury. [*Formerly* 77 P.S. § 511.2(1)]. Moreover, the required evaluation is of 'the percentage of permanent impairment *of the whole body* resulting from the compensable injury.'" *Id.* (citing 77 P.S. § 511.2(8)(ii)) (emphasis in original). The Court further noted:

> We have no difference with the Commonwealth Court's reasonable holding that a notice of compensation payable should define "compensable injury" for purposes of this inquiry. Such recognition, however, simply does not determine the range of impairments which may be "due to" such injury. Under Section 306[(a.3)] and the applicable impairment guidelines, the physician-evaluator must exercise professional judgment to render appropriate decisions concerning both causality and apportionment. *See id.*; *accord* [AMA Guides] ("Physicians must use their clinical knowledge, skills, and abilities to arrive at a specific diagnosis; define the pathology; and rate impairments based on the [AMA Guides'] criteria.").

9

*Id.* The Court in *Duffey II* explained the specific defect in the physician-evaluator's IRE as follows:

> Here, it is apparent from the record that the [p]hysician-[e]valuator did not apply professional judgment to assess (or, per the applicable regulations, [*see, e.g.*, 34 Pa. Code § 123.105(b),] arrange for an assessment of) the psychological conditions identified by [the c]laimant during the IRE examination; nor did he determine whether such conditions as might have been diagnosed were fairly attributable to [the c]laimant's compensable injury.

*Id.* at 990. The Court concluded that, "[i]n all events, the evaluative judgment is the touchstone on these subjects, as well as on the topic of causality." *Id.* at 991. "[P]hysician-examiners must exercise independent professional judgment to make a whole-body assessment of the degree of impairment due to the compensable injury, which discernment cannot be withheld on the basis that the physician-evaluator believes the undertaking is a more limited one." *Id.* at 996 (citations and internal quotations omitted).

More recently, in *Sicilia I*, a panel of this Court applied the Supreme Court's holding in *Duffey II* in considering whether a physician-evaluator properly excluded certain diagnoses from the calculation of the claimant's whole-person impairment rating because the diagnoses were not included in the accepted description of the claimant's injuries. *Sicilia I*, 277 A.3d at 1215. In *Sicilia I*, the employer filed a review petition seeking to reduce the claimant's benefits status from TTD to TPD based on an IRE evaluation that resulted in a whole-person impairment rating of 23%. *Id.* The claimant's injury description was established by stipulation of the parties and included lumbar strain, left knee contusion, chronic pain syndrome, and chronic adjustment disorder with anxiety and depression. *Id.* at 1214. Although the physician-evaluator's report noted additional diagnoses attributable to

10

the work injury, namely, lumbar disc protrusion or spondylolisthesis with lumbar radiculopathy, the physician-evaluator limited her initial impairment rating to only those diagnoses specifically included in the claimant's injury description. *Id.* In her initial report, the physician-evaluator rated the claimant's impairment below 35%. *Id.*

At the employer's request, the physician-evaluator calculated a supplemental impairment rating that included consideration of the additional diagnoses. The physician-evaluator then issued an addendum report, which indicated that including the additional diagnoses increased the claimant's impairment rating to greater than 35%. *Id.* at 1215-16. The WCJ in *Sicilia I* found the physician-evaluator to be "credible" with regard to the initial impairment rating and "not credible" as to the subsequent rating over 35% because the subsequent rating was based on diagnoses not included in the injury description. *Id.* at 1216. The WCJ accordingly reduced the claimant's benefits status to TPD. *Id.* The Board affirmed, and the claimant appealed to this Court arguing that *Duffey II* required reversal.

We reversed the Board, concluding that, per *Duffey II*, an IRE physician-evaluator may properly consider conditions or impairments not expressly included in the claimant's accepted or adjudicated injury description in calculating a whole-person impairment rating. We reasoned:

> [The e]mployer's arguments, and the [Board]'s holdings, boil down to an assertion that the decision of a WCJ describing the injuries controls the IRE process. However, [the e]mployer, and the [Board] and WCJ, did not cite (and we cannot find) authority that such decisions have preclusive effect on the IRE physician-evaluator. To the contrary, Section 306(a.3)(1)—as elaborated in *Duffey II*—places a great deal of discretion in the physician-evaluator to determine what diagnoses are "due to" a

11

work-related injury, outside the ordinary modification process.

. . . .

[The physician-evaluator's] initial IRE [r]eport and related testimony indicate that she felt her rating was constrained by the currently accepted diagnoses, thereby excluding lumbar protrusion or spondylolisthesis with lumbar radiculopathy, which [she attributed to the claimant's work-related injuries]. Thus, the physician-evaluator misapprehended her responsibility as a physician-evaluator in her initial calculation of [the c]laimant's whole[-]person impairment rating. . . . At all events, although the WCJ had authority as factfinder to make credibility determinations, such determinations must be based upon competent evidence. . . . The WCJ's reasoning for rejecting [the physician-evaluator's] testimony concerning the additional diagnoses, and the higher rating resulting from such inclusion, was not, in fact, a credibility determination based on evaluation of the evidence, but rather a misapprehension of the discretion accorded an IRE physician-evaluator. The only reason proffered for discrediting the additional diagnoses was that they had not been previously found by other WCJs. Simply put, the WCJ erred as a matter of law in constraining the IRE review solely to the earlier accepted descriptions of [the c]laimant's work injuries.

*Id.* at 1218-19 (citations, quotations, and footnote omitted). We accordingly reversed the Board and remanded for reinstatement of TTD. *Id.* at 1219.

An evenly-divided Supreme Court affirmed by *per curiam* order. *See Sicilia II*, 318 A.3d at 803. Justice Donohue, in an Opinion in Support of Affirmance (OISA) joined by Justices Dougherty and Mundy, concluded that this Court properly applied *Duffey II* to determine that an IRE physician-evaluator is permitted to consider and rate diagnoses not included in an accepted injury description that nevertheless are "due to" the compensable injury. *Id.* The OISA discussed *Duffey II* and noted that the terms "injury" and "impairment" must not be conflated in

12

conducting the impairment rating analysis. In this regard, the OISA emphasized that, although an injury description defines the compensable *injury*, such description simply does not determine the range of impairments that may be *due to* the injury. *Id.* at 804-05. The OISA further agreed with this Court's determination that the WCJ did not, in reality, reject the physician-evaluator's addendum report based on a credibility assessment, but, rather, made an "incorrect legal determination that additional diagnoses could not be considered during an IRE if those diagnoses were not specifically identified as injuries in the [injury description]." *Id.* at 807. The OISA interpreted *Duffey II* to hold that "some conditions . . . can be impairments under the statutory scheme defining the IRE process despite not being defined as compensable injuries" and that, regardless of whether a condition could have been added by amendment of the injury description, the description in any event does not "fully circumscribe the range of impairments that a physician-evaluator must consider." *Id.* at 809.[8]

In a brief Opinion in Support of Reversal (OISR), Justice Wecht concluded that *Duffey II* erroneously authorizes IRE physician-evaluators to consider and rate compensable injuries beyond those listed in the injury description, and for that reason, was wrongly decided and should be overturned. *Id.* at 811-12. *See also id.* at 813 (*Duffey II* mistakenly "took away the authority of WCJs to define the claimant's compensable injury" and "gave physician[-]evaluators permission to make a *de novo* assessment of the claimant's 'compensable injury' at every single IRE"). Justice Wecht's OISR was not joined by any other Justices.

---

[8] Justice Donohue's OISA ultimately concluded that this Court erred in remanding for the reinstatement of TTD without requiring further action by the WCJ. Justice Donohue would have remanded for the reinstatement of TTD pending the WCJ's performance of actual credibility determinations regarding the physician-evaluator's opinions and testimony. *Id.* at 811.

13

Justice Brobson also authored an OISR, joined by Justice Todd, in which he concluded that this Court improperly expanded the holding in *Duffey II*, which should be limited to cases where, "during the IRE proceedings, the claimant sought to litigate before the WCJ the extent of his work-related injury and, in doing so, introduced his own medical evidence to establish . . . that the scope of the work-related injury had changed." *Id.* at 827. Thus, although Justice Brobson would interpret *Duffey II* to permit an IRE physician-evaluator to consider diagnoses reported by the claimant but not included in the injury description in calculating a whole-person impairment rating, he also would interpret *Duffey II* to preclude a WCJ from relying upon such an impairment rating unless the claimant presents expert medical testimony that would permit amendment of the injury description to include those additional diagnoses. *Id.* at 827-28. Because the claimant in *Sicilia I* did not present his own medical evidence and relied exclusively on the IRE physician-evaluator's testimony and opinions, Justice Brobson would conclude that the WCJ properly rejected as not credible the opinions contained in the physician-evaluator's addendum report. *Id.*

## C.    Analysis

Here, although its argument is not entirely consistent throughout its brief, Employer chiefly argues that the Board's decision must be reversed because (1) IRE physician-evaluators cannot be expected to determine the nature and extent of a work injury; (2) in any event, both *Duffey II* and *Sicilia I* are distinguishable; and (3) WCJ Timme's findings regarding Dr. Fried's testimony were arbitrary and capricious in that Dr. Fried was not inconsistent in testifying that he considered Claimant's subjective complaints but nevertheless did not include them in his calculation of Claimant's whole-person impairment rating. We disagree on all counts.

14

We begin by emphasizing that, given the nature of the Supreme Court's affirmance in *Sicilia II*, we must apply the holding of *Duffey II* as we interpreted it in *Sicilia I*. That is, we understand *Duffey II* to require IRE physician-evaluators, pursuant to Section 306(a.3) of the Act, to consider all impairments that are "due to" a claimant's work-related injury in calculating a whole-person impairment rating, which impairments may include ones not specifically named in the injury description. Rejecting a physician-evaluator's opinions and testimony exclusively on the ground that he or she considered impairments not included in the injury description therefore is error as a matter of law. *Sicilia I*. Further, *Duffey II* and *Sicilia I* do not expressly require a claimant to either present expert medical testimony or seek amendment of an injury description before a WCJ may consider and credit an impairment rating based on impairments *dehors* the injury description.[9] Here, WCJ Timme rejected Dr. Fried's testimony on the ground that Dr. Fried declined to include Claimant's additional conditions in the impairment rating calculation specifically because they were not included in the injury description. Pursuant to *Duffey II* and *Sicilia I*, which we find to be applicable and controlling, Dr. Fried's opinions and testimony were legally deficient in this regard, and WCJ Timme did not err in rejecting them.

Regarding WCJ Timme's findings, we note first that Employer's refrain throughout its brief that Claimant's complained-of conditions were "wholly unrelated" to his work injury is inaccurate. There are no findings anywhere in the record to that effect, and Dr. Fried did not testify as such. Instead, Dr. Fried acknowledged that the conditions reasonably could be caused by Claimant's low back injury and were consistent with it. He further testified and indicated in his

_____

[9] Although we acknowledge that Justice Brobson's OISR in *Sicilia II* concluded to the contrary in this respect, we are constrained to apply *Duffey II* and *Sicilia I* as they thus far have been controllingly interpreted.

15

report that he did not include the conditions in his whole-person impairment rating because they were not part of Claimant's injury description and he did not have a physician workup on them. Although it is apparent that Dr. Fried sincerely attempted to "go by the rules" in limiting his IRE evaluation to a "conservative" rating of Claimant's conditions, under *Duffey II* and *Sicilia I*, we must conclude that his failure to adequately consider these conditions and render opinions as to whether they were "due to," or caused by, Claimant's work injury was in error.

WCJ Timme found that Dr. Fried's opinions regarding Claimant's conditions were inconsistent and not competent or credible. In *Sicilia I*, we concluded that the appropriate scope of a physician-evaluator's discretion in conducting an IRE review under Section 306(a.3) of the Act was a question of law. *Sicilia I*, 277 A.3d at 1219. Thus, whether WCJ Timme appropriately rejected Dr. Fried's testimony based on his misapprehension of his obligations under Section 306(a.3) of the Act most appropriately is described as a determination of whether the WCJ Timme erred as a matter of law. Because WCJ Timme correctly found that Dr. Fried's opinions did not adequately consider Claimant's conditions under *Duffey II* and *Sicilia I*, there was no error of law, and the associated findings of fact were neither arbitrary nor capricious.

## IV. CONCLUSION

The Board concluded that, under *Duffey II* and *Sicilia I*, WCJ Timme's findings were not arbitrary and capricious because Dr. Fried's impairment rating did not adequately consider, or make any causation determinations regarding, the subjective conditions Claimant reported during his physical examination. We must agree. It is undisputed in the record that (1) Claimant reported the conditions to Dr. Fried, (2) Dr. Fried opined that each of the conditions at least reasonably could be

16

"due to" Claimant's lower back injury,[10] and (3) Dr. Fried nevertheless did not consider the conditions in his whole-person impairment rating specifically because they were not part of Claimant's work injury description.   We accordingly affirm the Board.

_____
PATRICIA A. McCULLOUGH, Judge

---

[10] To the extent that Dr. Fried's opinions in this regard could be construed as opinions on causation, they would only further support the *inclusion* of Claimant's additional conditions in the calculus of the whole-person impairment rating.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,          :
          Petitioner     :
                     :  No. 1190 C.D. 2023
       v.             :
                     :
Lamont Turner (Workers'   :
Compensation Appeal Board), :
          Respondent   :

## *__ORDER__*

AND NOW, this 17th day of October, 2024, the October 6, 2023 Order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,                    :
                 Petitioner      :
                               :
        v.                       :  No. 1190 C.D. 2023
                               :  Argued: June 4, 2024
Lamont Turner (Workers'               :
Compensation Appeal Board),          :
                 Respondent      :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MATTHEW S. WOLF, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

CONCURRING OPINION
BY SENIOR JUDGE LEAVITT            FILED: October 17, 2024

The majority affirms the adjudication of the Workers' Compensation Appeal Board (Board) denying the City of Philadelphia's (Employer) modification petition. In doing so, the Board reasoned that *Sicilia v. API Roofers Advantage Program (Workers' Compensation Appeal Board)*, 277 A.3d 1213 (Pa. Cmwlth. 2022) (*Sicilia I*), *aff'd*, 318 A.3d 803 (Pa. 2024) (*Sicilia II*), and *Duffey v. Workers' Compensation Appeal Board (Trola-dyne, Inc.)*, 152 A.3d 984 (Pa. 2017) (*Duffey II*), required this result. I concur in the majority's decision to affirm the Board and write separately to highlight the need for *Duffey II* to be reconsidered.

Employer filed a modification petition to revise Lamont Turner's (Claimant) workers' compensation disability status from total temporary to partial temporary. In support, Employer presented the testimony of Dr. Guy Fried, who performed an impairment rating evaluation (IRE) of Claimant and calculated his whole-person impairment rating at 31%, based upon Claimant's adjudicated work

injury to his lumbar spine and his radiculopathy.[1]  Dr. Fried did not include Claimant's complaints about depression, anxiety, urinary incontinence, or weight gain in his impairment evaluation.  Nevertheless, Dr. Fried stated that his impairment rating considered Claimant's subjective complaints, as well as Claimant's physical examination and medical records.

The Board affirmed the decision of the Workers' Compensation Judge (WCJ) to discredit Dr. Fried's testimony.  Citing *Sicilia I*, 277 A.3d at 1217-18, the WCJ explained that Dr. Fried "misapprehended" the discretion afforded to an IRE physician under Section 306(a.3) of the Workers' Compensation Act (Act)[2] to "exercise professional judgment to render appropriate decisions concerning both causality and apportionment."  WCJ Decision, 1/23/2023, at 6, Finding of Fact No. 4.  Accordingly, Dr. Fried's misapprehension of the Act rendered his testimony internally inconsistent and, thus, incompetent.  *Id*.

In *Duffey II*, our Supreme Court construed former Section 306(a.2)(1) of the Act[3] to mean that the IRE physician-evaluator must consider not only the

---

[1] Prior to the instant proceeding, Claimant was determined to be fully recovered from the work-related injuries to his left hip, left knee, and feet.

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111), 77 P.S. §511.3(a.3).

[3] Added by Section 4 of the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. §511.2(1).  At the time of the decision in *Duffey II*, former Section 306(a.2)(2) of the Act, *formerly* 77 P.S. §511.2(2), provided for modification of a claimant's indemnity benefits, from total to partial disability, when a claimant was shown to have a whole-body impairment rating of less than 50%.  Subsequently, our Supreme Court struck down former Section 306(a.2) in its entirety as an unconstitutional delegation of legislative authority (*see Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017)), and the General Assembly passed Act 111, which repealed former Section 306(a.2) and added Section 306(a.3) to the Act, 77 P.S. §511.3.  Among other things, Section 306(a.3) provides for modification of a claimant's indemnity benefits, from total to partial disability, when a claimant is shown to have a whole-body impairment rating of less than 35%.

adjudicated work injuries but other medical conditions known at the time of the IRE, regardless of whether those other conditions have been adjudicated as work related. The Supreme Court explained that former Section 306(a.2)(1) "explicitly invests in physician-evaluators the obligation to 'determine the degree of impairment *due to* the compensable injury.'" *Duffey II*, 152 A.3d at 989 (quoting *formerly* 77 P.S. §511.2(1)). "Per such express terms, a physician-evaluator must consider and determine causality in terms of whether any particular impairment is 'due to' the compensable injury. . . . Moreover, the required evaluation is of 'the percentage of permanent impairment *of the whole body* resulting from the compensable injury.'" *Duffey II*, 152 A.3d at 989 (quoting former Section 306(a.2)(8)(ii) of the Act, *formerly* 77 P.S. §511.2(8)(ii)) (emphasis in original).

Following *Duffey II*, this Court decided *Sicilia I*, where the IRE physician did two impairment evaluations: one that was limited to the claimant's adjudicated work injury and a second that considered the claimant's allegation that his work injury included spondylolisthesis. The WCJ credited the first evaluation and rejected the second as incredible. This Court held that the WCJ's decision to reject the second evaluation was not a credibility determination but, rather, the result of a "misapprehension" of the Act. *Sicilia I*, 277 A.3d at 1219. The dissent, by contrast, would have deferred to the WCJ's credibility decision. *Sicilia I*, 277 A.3d at 1119 (Leavitt, J., dissenting).

On further appeal, an evenly divided Supreme Court affirmed.[4] *Sicilia II*, 318 A.3d 803. Justice Donohue, joined by Justices Dougherty and Mundy, would

---

[4] Where the opinion of the Supreme Court is evenly divided, the judgment of the lower court is affirmed; however, the divided opinion does not furnish a precedent. *See Commonwealth v. Orr*, 255 A.3d 589, 596 (Pa. Super. 2021).

MHL-3

affirm this Court insofar as it correctly applied *Duffey II* but would remand the matter to the WCJ for a new credibility determination.

Justice Wecht would reverse this Court and overturn *Duffey II*. In his view, *Duffey II* cannot be reconciled with the Act because it deprived the WCJ of the exclusive authority to define the claimant's compensable injury. *Sicilia II*, 318 A.3d at 812.

Justice Brobson, joined by Chief Justice Todd, would reverse this Court on the grounds that this Court impermissibly expanded the reach of *Duffey II* and, then, substituted its assessment of witness credibility for that of the WCJ. In Justice Brobson's view, *Duffey II* should be limited to its "very unique circumstances," where, "during the IRE proceedings, the claimant sought to litigate before the WCJ the extent of his work-related injury and, in doing so, introduced his own medical evidence to establish that a material mistake of fact or law was made at the time the [Notice of Temporary Compensation Payable (NTCP)/Notice of Compensation Payable (NCP)] was issued or that the scope of the work-related injury had changed." *Sicilia II*, 318 A.3d at 827. By contrast, the claimant in *Sicilia I* did not produce any medical evidence to establish that he suffered a spondylolisthesis or that it was work related.

Here, Employer argues that *Duffey II* is distinguishable and should be limited to its facts. Unlike the claimant in *Duffey II*, who filed a review petition seeking to amend the description of his work-related injury, here, Claimant did not seek to expand his work injury to include depression, anxiety, incontinence, and weight gain. Claimant presented no medical evidence to establish the existence of those diagnoses, let alone evidence that they would have made Claimant's

impairment rating greater than 35%. Employer makes good points, but they did not prevail in *Sicilia II*.

Employer also argues that the WCJ's stated reason for not crediting Dr. Fried's opinion does not hold up to close scrutiny. Dr. Fried did not ignore Claimant's anxiety and weight gain, but he did not include them in his impairment evaluation. On this basis, the WCJ found his testimony inconsistent. However, it is equally possible, as Employer argues, that Dr. Fried found that Claimant's complaints were not due to his compensable injury and, thus, did not include them in his impairment evaluation.

In his deposition, Dr. Fried testified that he did not rate Claimant's complaints of depression, anxiety, and weight gain. Dr. Fried explained that they were "not listed in the [Workers' Compensation Automation and Integration System]. [They were] not listed by Dr. Young. It was not my understanding that [they were] accepted as the injury, so I am trying to go by the rules." Fried Dep. at 16. Based on this testimony, the WCJ found that Dr. Fried misapprehended the discretion accorded an IRE physician-evaluator under Section 306(a.3) of the Act, and his misapprehension rendered his testimony internally inconsistent.

However, it would have been virtually impossible for Dr. Fried to rate Claimant's subjective complaints. A review of Dr. Fried's testimony explains this point.

To calculate Claimant's whole-person impairment, Dr. Fried first had to determine that Claimant had reached "maximum medical improvement" with regard to his compensable injury, which is "a point at which a condition is stabilized and there's unlikely a change, improved or worsened, substantially in the next year with or without treatment." Fried Dep. at 13. Dr. Fried then turned to the Sixth

Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides).  Claimant's disc herniation "was best rated as a Class 4," which the AMA Guides define as "the intervertebral disc herniation at multiple levels with *medically documented findings* with or without surgery and with residual multilevel radiculopathy at the appropriate levels."  *Id*. at 15 (emphasis added).  This assigned Claimant a 29% of the whole-person impairment.  Dr. Fried then considered Claimant's "adjustment grid values" taken into consideration of his "pain and symptoms at rest," his "positive straight leg raise with reproducible radicular pain and findings," and his "clinical studies."  *Id*. at 15-16.  This moved Claimant's "grid shift" from 29% to 31%.  *Id*. at 16.  Dr. Fried testified that in conducting the IRE, he assigned Claimant the "higher percentage" because "[y]ou always give the patient the benefit of the doubt."  *Id*. at 14.

Without any documented medical findings on Claimant's complaints of depression, anxiety, weight gain, and incontinence, Dr. Fried could not determine if Claimant has reached maximum medical improvement.  Nor could he undertake a rating of them under the AMA Guides, which requires medical evidence to assign a "class" and "grid shift" to arrive at a percentage impairment.

As observed by the Chairman of the Board, Alfonso Frioni, Jr., it "should not be the job of the IRE physician to ferret out what conditions may be attributable to the compensable injury based on comments made by the claimant during the IRE."  Board Adjudication, 10/6/2023, Concurring Opinion at 3.  This is, nevertheless, the current state of the law:  the IRE physician must decide whether a complaint brought to his attention by the claimant is "fairly attributable" to the claimant's compensable injury. *Duffey II*, 152 A.3d at 990.  It also means that where, as in this case, there are no medical records to support the claimant's "comments,"

the IRE is over because without a medical diagnosis and record of treatment, the IRE physician cannot undertake the threshold step of determining maximum medical improvement.

The Act requires the WCJ to define and, where appropriate, expand the scope of a compensable work injury. *See* Section 413(a) of the Act, 77 P.S. §772 (providing that the WCJ may modify an NCP upon proof that a claimant's disability has increased). The sole purpose of the IRE is to determine the claimant's disability status after maximum medical improvement from the adjudicated work-related injury. The Act defines "impairment" as an "anatomic or functional abnormality or loss that results from the *compensable injury* and is reasonably presumed to be permanent." Section 306(a.3)(8)(i) of the Act, 77 P.S. §511.3(8)(i) (emphasis added). It is a contradiction in terms to use the IRE to restate the compensable work injury that is presumed permanent.

The General Assembly intended that the nature and scope of a compensable work injury be proved by the claimant and in accordance with the Act's orderly procedures. The extent of the claimant's disability resulting from the compensable injury is a separate inquiry, which is the focus of the IRE provisions in the Act. *Duffey II* blurs the distinction between defining a work injury and determining the impact of that work injury upon the claimant's earning power.

*Duffey II* should be revisited.


_____
MARY HANNAH LEAVITT, President Judge Emerita